424

## CANDLER v. UNITED STATES.
### No. 10946.

Circuit Court of Appeals, Fifth Circuit.

Dec. 27, 1944.

Rehearing Denied Jan. 19, 1945.

Bernard A. Golding, of Houston, Tex., for appellant.

Brian S. Odem, U. S. Atty., Joseph W. Cash and James K. Smith, Asst. U. S. Attys., all of Houston, Tex., for appellee.

Before HOLMES, McCORD, and LEE, Circuit Judges.

McCORD, Circuit Judge.

Charles Edward Candler was found guilty by the trial court of knowingly, wilfully and feloniously failing to perform a duty imposed upon him by the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 301 et seq.

The indictment contains two counts: (1) Knowingly, willfully and feloniously failing to report for induction into the armed forces of the United States under the provisions of the Act when ordered by his local draft board so to do. (2) Knowingly, willfully and feloniously failing to keep his local draft board advised at all times of the address where mail would reach him as required by local draft regulation.

By agreement of the defendant and counsel for the United States, right of trial by jury was waived. From the judgment of conviction the defendant has appealed.

Charles Edward Candler enlisted in the United States Maritime Service on June 3, 1937, and, except for a period of ten months, served continuously until May 17, 1943. He registered pursuant to the Selective Training and Service Act of 1940 at Hudson, New Jersey, October 16, 1940, giving an address which placed him under the jurisdiction of Local Board 15, Houston, Harris County, Texas. He stated that his occupation for the last three years had been that of marine oiler, and claimed his mother, Mrs. Emma E. Candler, as dependent. He claimed no conscientious objection to war. The board on December 11, 1940, classified Candler in class III, subdivision A, deferring him because of the dependency of his mother.

The defendant was employed on board the SS Ohio, a Texas Company vessel, and after serving his time was signed off on December 15, 1941. Defendant had not visited his mother at Houston for several years and he returned to spend Christmas

with her and found that his brother had enlisted in the Navy; he protested, but his mother persuaded him to remain with her and he secured a job in a ship building plant at Houston and immediately gave the draft board his address. He worked a few months and then changed and worked for a dry dock company at Galveston, and after a few months returned to Houston and there worked in a steel plant, living with his mother. He kept the draft board informed of his address at all times. All told, he worked in three plants which were engaged in war work for about ten months.

On August 7, 1942 defendant was reclassified from 3-A to 1-A. He thereupon appealed to his board at Houston to permit him to enlist in the United States Maritime Service, explaining that he could be of more service to his country in that capacity than in the infantry where the board proposed finally to place him. Defendant thereafter again entered the Merchant Marine Service, shipping aboard the S. S. Baldhill. The board on October 7, 1942, ordered defendant to report for induction on October 22. He did not receive this notice in time to comply with the order, as he was at sea. However, immediately after he secured employment he notified his draft board at Houston, and kept the board notified where he could be reached by mail. Defendant was shipping from ports in California and when notified to report for induction and later when advised by his board that he was delinquent he did not receive these letters which were returned, as he was aboard ship.

On January 4, 1943, the United States Maritime Service wrote the draft board at Houston, advising that Candler had been accepted for training in its school at Alameda, but the draft board made no reply, and he went back to sea.

On April 8, 1943, while the defendant was employed as engineer aboard the U. S. A. T. Sea Witch, the War Shipping Administrator wrote the local board at Houston requesting that defendant be deferred, stating that local draft board memorandum No. 192 requires such deferment. This letter cites critical shortage of experienced seamen such as defendant. The local draft board clerk at Houston advised the War Shipping Administrator that such request would not be recognized. Thereafter the War Shipping Administrator again addressed the draft board at Hous-

ton requesting deferment of defendant under section 6 of Occupational Bulletin No. 26-a. The local draft board clerk again wrote the War Shipping Administrator and refused such request, stating that it was planned to prosecute the defendant.

The War Shipping Administrator on May 11, 1943, wired the State Director of Selective Service in Texas, urging that because the defendant was serving as deck engineer on a U. S. Maritime vessel, an essential occupation, that delinquency charges be withdrawn and that he be classified as 2-b. The local draft board of Houston advised that defendant would be prosecuted regardless of reclassification.

The defendant continued to notify his board at Houston from time to time as he returned from voyages as to his whereabouts, and much of the evidence leads to the conclusion that he knew he was delinquent. However, as he continued to go to sea it also leads to the further conclusion that he confidently expected the board to reconsider his case and release him for Maritime Service. We are warranted in this view from the following letter dated January 14, 1943, from the clerk of the Houston board, in which it is indicated that his delinquency, if such status existed, was cast aside and he was to be inducted into the service in California:

"We are enclosing herewith DSS Forms 221 and Form 390, which you will note is dated September 23. We have been having quite a bit of difficulty with this registrant even to the point of notifying the F. B. I. and the United States District Attorney in the case. This registrant is now in California and has been contacted by the F. B. I. and the decision was that we send him for induction immediately, forwarding the papers to your Board. This registrant was supposed to have been inducted October 22 but evaded this induction. Since we have gone this far in the case, I wonder if it would be possible for you to use this Form 390 in inducting him, or if you have a clinic in your Board and think it advisable to send him for another blood test before you induct him, we'll ask that you use your discretion in the matter. The thing we are trying to do is induct him into the Army, not the Navy, as he was called for induction last October. I am giving seven days time on this and feel sure that you can process it as close to January 22 as possible. An expression

from you as to how this case was handled will be greatly appreciated. This file has been a bone of contention to us for many months.

"Lucille Mantey,
"Chief Clerk, Local Board 15
"Harris County, Texas."

Further evidence was elicited from the clerk of the board:

"Q. Now, then, on January 14, 1943 you in effect enlisted the services of Local Board 218 in Los Angeles, California to have the man inducted into the Army, didn't you? A. Exactly.

"Q. And the primary purpose of this letter to this Board in California was to see to it that he was inducted into the Army in order to avoid any further expense? A. That is right."

When the defendant was directed to go before the California board to be inducted he was again at sea and did not get the notice. Finally, on June 25, 1943, the F. B. I. located the defendant and brought him before the board in Los Angeles. He readily answered all questions propounded to him. He denied that he had ever received notice to report for induction and notice of delinquency. He thereupon expressed a willingness to enter the armed service and signed up and was examined and a blood test was made. He then was taken before a judge who ordered the officer to have him inducted into the army. At that time a telotype was received either from the Houston draft board or from some one in Houston ordering that the defendant be returned to Houston for prosecution. At Houston he was tried and there offered again to enter the service which was denied to him, and he was convicted and sentenced to serve one year and one day in prison.

▮ We do not question the power of the board under the Act to deny defendant the right to enter the Maritime Service; nor to do any and all things necessary to effect his induction into the armed service of the United States. Each and every draftee must bow to the decisions and orders of the board. We only advert to the interest manifested by the War Shipping Administrator, which must have been known to the defendant, and also his unfailing efforts to keep his board informed of his address, to disclose his intent, which certainly, we think, was not to willfully disobey the orders of his board. Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534; Caldwell v. United States, 5 Cir., 139 F.2d 121.

▮ However this may be, if defendant was delinquent, then we are of opinion that such delinquency was waived when the Los Angeles board was instructed to induct him. He was not located at that time, but later was contacted by the F. B. I. and brought before the board, and then and there he offered to enter the service. The request of the Houston board had never been rescinded, and we are constrained to hold that it could not in good faith change its order to that board to induct the defendant, and when it was in the course of consummation, order the defendant back to Houston for prosecution.

The defendant had long served in the Merchant Marine Service. He was under the impression and believed the Board would permit him to remain in that service. After he again shipped in this service he was promoted from oiler to deck engineer. Moreover, as he completed voyages at sea he kept informing the board of his address until the F. B. I. brought him before the board in California.

This defendant was not a draft dodger, nor was he a milk and cider "conscientious objector." He was eager and anxious to serve his country in the hard and dangerous way. When called before the board he came from the sea and at a time when the sharks were following the submarines to the kill.

▮ The evidence is as consistent with innocence as with guilt, and fails signally to show *willful intent,* and we are not willing to convict the defendant on the evidence as disclosed by the record here.

The judgment of conviction is reversed and the cause remanded with direction to discharge the defendant.

Reversed and remanded with directions.

HOLMES, Circuit Judge (dissenting).

The opinion of the majority neglects to mention a chain of undisputed facts which, in my opinion, compels the conclusion of the trial court that appellant was guilty as charged.

On September 28, 1942, the appellant, who had been placed in class 1 A, was no-

tified that he had passed his physical examination preliminary to induction. Between that date and October 7, 1942, he went to his draft board and requested a release to the merchant marine. The local board, acting in accordance with its established policy, declined to release him, and he was notified by the clerk of the board that he would be called for induction in the next group, which, though the exact date could not be divulged, would be called within three weeks. He told the clerk that he was not going into the army. He then had separate interviews with the chairman of the local board and with the appeal agent, still seeking a release; and he told each of them that he was not going into the army.

On October 7, 1942, the local board mailed to appellant's address a notice to report on October 22nd for induction. On October 15th, the board received from appellant a letter mailed in California, which gave a new California address. He did not report for induction on October 22nd. On October 31st, the board received a letter from appellant postmarked "Houston, Texas," which gave another California address. On November 16th, the board addressed a letter to appellant at his California address, advising that he was delinquent and directing him immediately to contact his board. On November 23rd, the board received a letter from appellant giving three new addresses. On January 20, 1943, the board mailed to appellant at each of these addresses a notice to report for induction at a California induction station. All of these notices were returned unclaimed.

Between November, 1942, and May, 1943, the appellant, the United States Maritime Enrollment Service Office, and others, attempted to secure appellant's release to enter the Merchant Marine. On May 13, 1943, upon the request of the Administrator of the War Shipping Administration, the file kept by the local board relating to appellant was referred to the National Headquarters of Selective Service for consideration. On June 11, 1943, a letter was written to the State Director of Selective Service of Texas in behalf of the Director of Selective Service, reading in part as follows: "If the United States Attorney in Houston intends to prosecute this registrant, delinquency charges should not be withdrawn until the prosecution is terminated. An examination of the chronology of this case would seem to indicate that the registrant, to say the least, has not acted in good faith in the matter of the mailing addresses furnished the local board, particularly in connection with his written statement that the board should contact him in the future by writing any of the addresses furnished. The efforts of the post office to make the deliveries and its reasons for returning the envelopes are shown thereon." When this letter was written, it was the determination of the United States Attorney at Houston to prosecute the appellant.

On June 10, 1943, the local board received a telegram from appellant in California, asking his present classification and giving a new mailing address. On June 25th, the board mailed a notice of delinquency to appellant at this address, which letter was returned unclaimed. On June 25th, appellant was arrested by agents of the F. B. I. in San Francisco. Appellant was ashore for weeks at a time during the entire period of his delinquency.

When appellant signed aboard the S/S Baldhill in October, he told the master that he had no draft classification. He received the original notice to report for induction after October 22nd, and he received in due course the board's letter of November 16th advising him that he had been ordered to report for induction and was delinquent for failing to do so; but when apprehended by the F. B. I., he told the officer that he had not received either a notice to report or a notice of delinquency.

Did appellant fail to keep his draft board advised at all times of an address where mail would reach him? In a period of eight months he gave his board six different addresses, and mail addressed to him at each address was returned unclaimed. The only effective address ever submitted after his departure from Houston was that given upon the postal card that was mailed in Houston while appellant was on the Baldhill in the Pacific.

Did appellant fail to report for induction? He deliberately left Houston a few days before he knew he would be ordered to report, giving the local board mailing addresses that were, to say the least, not effective to reach him. After receiving notice that he had been ordered to report for induction and was delinquent for his fail-

428

ure to comply therewith, he took no action whatsoever except to send the board three new addresses, at which mail did not reach him. Thereafter for more than six months, though well advised of his status as a registrant, he remained beyond the call of his draft board until he was apprehended by the F. B. I.

What of his intent? Were these violations willfully and knowingly committed? Appellant flatly told three officials that he would not go into the army. While these utterances were fresh upon his lips, and when he knew that his induction was imminent, he departed from Houston obviously intending to be far from that city when his notice of induction was mailed. For more than one month he had every reason to expect to be ordered to report for induction, and for six months he knew that he had been so directed; but for the whole of that time he played hide and seek with his draft board until the game was ended by his arrest. Not by a single word or deed did appellant indicate any change of heart from his announced unwillingness to be inducted until his arrest brought the realization that he would be imprisoned if he failed to submit. To hold that such conduct does not violate the law enables the registrant to make a mockery of the Selective Service Act.

The majority rests its decision in part upon the doctrine of waiver, holding that the unrescinded order of the board to appellant, ordering that he report for induction in California, precluded it from prosecuting the criminal action. With deference, this position is wholly untenable. Selective Service Regulation 642.5 provides that after a delinquent registrant has been reported to the United States Attorney, the decision whether such delinquent shall be prosecuted rests entirely with that attorney. Notice of appellant's delinquency was communicated to the United States Attorney on December 22, 1942, and after that date whatever right the local board had to enforce or waive these violations passed from them. Marshall v. United States, 5 Cir., 140 F.2d 261. Appellant was not returned from California to Texas for prosecution pursuant to the order of the local board, but that action was directed by the United States Attorney at Houston.

I respectfully dissent.