## SMITH v. UNITED STATES.
### No. 5329.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1945.

Writ of Certiorari Granted May 28, 1945.
See 65 S.Ct. 1406.

See also Smith v. Richart, D.C., 53 F. Supp. 582.

Hayden C. Covington, of Brooklyn, N. Y. (Curran E. Cooley, of Anderson, S. C., and Grover C. Powell, of Atlanta, Ga., on the brief), for appellant.

Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C., Irving S. Shapiro, Atty., Department of Justice, of Washington, D. C., and Henry H. Edens, Asst. U. S. Atty., of Columbia, S. C. (C. N. Sapp, U. S. Atty., of Columbia, S. C., and Nathan T. Elliff, Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a conviction and sentence under an indictment charging violation of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix § 301 et seq., in failing to report for induction pursuant to the order of a local draft board. Defendant is a member of the sect known as Jehovah's Witnesses and claims exemption from the provisions of the Act on the ground that he is a minister of religion. This claim was denied by the local board and he was classified 1-A and ordered to report for induction. The appeal presents two questions: (1) Whether the trial court erred in refusing to direct a verdict for defendant on the facts relating to the refusal to report, and (2) whether the court erred in excluding evidence as to the ministerial status of defendant. Both questions, we think, must be answered in the negative.

The facts with respect to defendant's failure to report are as follows: Defendant was ordered by the draft board to report to the board at its office in Columbia, S. C., for induction at 8:30 A. M., September 30, 1943. He made up his mind not to report and so notified his father, who was anxious that he report and be inducted.

His father arranged with a state magistrate and two local officers to take defendant by force and carry him to the induction center at the time fixed for induction. On the morning of September 30th, defendant, who lived two miles from the office of the board where he was required to report, was making no effort to report but, between 8 and 8:30 in the morning, was at his home engaged in shaving, and intending thereafter, not to report to the draft board, but to a United States Commissioner and explain why he had not complied with the board's order. While he was so engaged, the magistrate and officers who had been employed by his father arrived at his home and by a show of force compelled him to go with them to the induction center at Fort Jackson near Columbia, S. C., where they turned him over to the officers of the army charged with the duty of inducting draftees. Defendant notified these officers that he was a minister of the Gospel and that he refused to be inducted into the army. He was finger printed and examined by them, but refused to take an oath or go through the induction ceremony, protesting throughout the proceedings that he would not be inducted.

At the conclusion of the induction ceremony in which other draftees participated, defendant was notified that he was in the army, notwithstanding his refusal to be inducted. He was granted a three weeks leave along with the other draftees and was ordered to return to Fort Jackson three weeks later. He returned in accordance with this order but refused to put on the army uniform or obey orders. He was tried by a court martial for disobedience of orders and sentenced to a term of imprisonment but, after the decision in Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L. Ed. 917, was released on habeas corpus. He was then indicted in the court below for failure to report for induction as ordered by the draft board.

Upon the facts as stated, there was no error in refusing to direct a verdict of not guilty; for defendant was guilty, on his own admissions, of failing to report for induction as ordered by the board. Not only does he admit that he did not intend to report and remained at home when he would necessarily have been on his way to the board's office if he had intended to comply with its order, but also that, after he had been forcibly carried to the place of induction, he persist-

ently maintained an attitude of defiance and repeatedly stated that he would not be inducted. To report for induction means to present oneself not only at the appointed place but also in readiness "to go through the process which constitutes induction into the army." United States v. Collura, 2 Cir., 139 F.2d 345, approved in Billings v. Truesdell, 321 U.S. 542, at page 557, 64 S.Ct. 737, 88 L.Ed. 917. Certainly one who has made up his mind not to report for induction and who, after having been dragged by force to the induction center, persistently refuses to go through the process of induction, cannot be said to have reported for induction as ordered by the board, within any possible meaning that can be given to that language.

Defendant makes two arguments which are in large measure inconsistent with each other. One is that the forcible seizure made it impossible for him to report to the board and thus excuses the failure to report; the other, that he was actually present at the induction center and thus substantially complied with the order of the board. A forcible seizure which made it impossible to comply with the board's order would doubtless be a defense; but nothing of the sort is involved here. The seizure made it, not impossible, but possible, for defendant to comply; and, with the opportunity for compliance at hand, he failed to avail himself of it. Likewise, presence at the induction center, rather than at the board's office, would doubtless be sufficient compliance on the part of one who was attempting to comply with the order to report for induction, but not on the part of one who had been carried there against his will and who, being there, persistently refused to be inducted. One ordered to report for induction who presents himself at the place designated with the statement that he does not intend to be inducted at all, can hardly be said to have reported for induction. A fortiori, one who is present at the place of induction only because he is carried there by force, and who defiantly refuses induction throughout the period of his presence, cannot be said, in any reasonable sense, to have reported for such purpose. This should be so obvious as not to require statement.

Directly in point is the decision of the Second Circuit in the case of United States v. Collura, supra, cited with approval by the Supreme Court in Billings v. Truesdell, supra. In that case, where the charge was failure to report for induction, the draftee appeared at the induction station at the appointed hour but stated that he refused to be inducted unless given a guarantee against compulsory vaccination. In affirming a conviction the court said, 139 F. 2d at page 345:

"Obviously the duty to report for induction means more than putting in an appearance at the induction station. The selectee must not only appear but must be ready to go through the process which constitutes induction into the army. Admittedly the appellant did not report for induction, but reported for the purpose of making a bargain with the military authorities and entering the army only if the terms agreed upon were satisfactory to his personal views as to vaccination."

In the case at bar the draftee did not report for the purpose of making a bargain with the military authorities as a condition of induction. He did not report at all. He was forcibly taken to the induction station and, being there, refused unconditionally to be inducted. See also United States v. Longo, 3 Cir., 140 F.2d 848.

██ On the second question, we think it clear that the trial court was correct in excluding evidence as to the alleged ministerial status of defendant and refusing to charge the jury with regard thereto. Whether the defendant was entitled to exemption from military service or not on the ground that he was a minister of religion, this was a question of fact committed to the determination of the draft board, with appeal to the appeal board and in a limited number of cases to the President, but with no provision for review by the courts. United States v. Grieme, 3 Cir., 128 F.2d 811, 814-815. It was his duty to comply with the board's orders; and, in a prosecution for failure to do so, no defense based on the invalidity of the orders can be entertained. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305. Compliance with the board's orders includes submitting to induction, which is the last step in the process leading to induction; for "the order of the local board to report for induction includes a command to submit to induction." Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, 745, 88 L.Ed. 917. As said by the Supreme Court in the case last cited:

"But induction under the Act and the present regulations is the end product of

submission to the selective process and compliance with the orders of the local board. It must be remembered that § 11 [50 U.S.C.A.Appendix § 311] imposes on a selectee a criminal penalty for any failure 'to perform any duty required of him under or in the execution' of the Act or 'the rules or regulations made pursuant thereto.' He who reports to the induction station but refuses to be inducted violates § 11 of the Act as clearly as one who refuses to report at all. United States v. Collura, supra. *The order of the local board to report for induction includes a command to submit to induction.* Though that command was formerly implied, it is now express. The Selective Service Regulations state that it is the 'duty' of a registrant who receives from his local board an order to report for induction 'to appear at the place where his induction will be accomplished', 'to obey the orders of the representatives of the armed forces while at the place where his induction will be accomplished', and *'to submit to induction.'* (Italics supplied.)

■ Defendant argues that he has exhausted the administrative process, as required by the Falbo case, when he has submitted to physical examination and been accepted by the military authorities, and that it is then open to him, if charged with refusal to obey the board's order with respect to the final matter of submitting to induction, to attack the validity of the order by showing that the board had classified him unreasonably. The trouble with this position is that the administrative process is not exhausted until the order of the board is complied with, which, as we have seen, embraces submitting to induction. When the Billings case is considered in connection with the Falbo case, there can be no question as to the correctness of this conclusion. In the Billings case, the court, after using the language which we have quoted above, goes on to say:

"Moreover, it should be remembered that he who reports at the induction station is following the procedure outlined in the Falbo case for the exhaustion of his administrative remedies. Unless he follows that procedure he may not challenge the legality of his classification in the courts. * * * These considerations together indicate to us that a selectee becomes 'actually inducted' within the meaning of § 11 of the Act when in obedience to the order of his board and after the Army has

found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed."

Following the procedure prescribed thus embraces undergoing induction; and not until this has been done may the legality of classification be challenged. United States v. Rinko, 7 Cir., 147 F.2d 1; United States v. Flakowicz, D.C., 55 F.Supp. 329, affirmed 2 Cir., 146 F.2d 874. The inductee may, of course, apply for habeas corpus as soon as his induction into the army is completed, and need not wait until he is court-martialed for disobedience of military orders.

■ This court was of opinion when the cases first arising under the Act came before us that the invalidity of an order of classification arising from the denial of due process might be asserted as a defense to a prosecution for failure to obey the order. See Baxley v. United States, 4 Cir., 134 F.2d 998, 999; Goff v. United States, 4 Cir., 135 F.2d 610. A different view, however, had been taken by the Circuit Court of Appeals of the Third Circuit in the United States v. Grieme, 3 Cir., 128 F.2d 811, 813, 815, where that court said:

"We think it is clear that, if a local draft board acts in an arbitrary and capricious manner or denies a registrant a full and fair hearing, the latter, although bound to comply with the board's order, may, by writ of habeas corpus, obtain a judicial determination as to the propriety of the board's conduct and the character of the hearing which it afforded. The registrant may not, however, disobey the board's orders and then defend his dereliction by collaterally attacking the board's administrative acts."

In the Goff case, supra, we expressly referred to the Grieme case, and, in justification of not following it, said [135 F.2d 612]: "It would seem * * * that the total invalidity of an order which would be necessary to justify release on habeas corpus would constitute a defense to a criminal action based on disobedience of that order." The Supreme Court, however, in the Falbo case, after referring to the conflict of view between the Goff and Grieme cases, adopted the view of the latter; and in his concurring opinion in Hirabayashi v. United States, 320 U.S. 81, 108, 109, 63 S.Ct. 1375, 1389, 87 L.Ed. 1774, Mr. Justice Douglas referred to the rule of the

Grieme case as settled law, saying: "There are other instances in the law where one must obey an order before he can attack as erroneous the classification in which he has been placed. Thus it is commonly held that one who is a conscientious objector has no privilege to defy the Selective Service Act *and to refuse or fail to be inducted.* He must submit to the law. But that line of authority holds that after induction he may *obtain through habeas corpus a hearing on the legality of his classification by the draft board.*" (Italics supplied.) If habeas corpus is the remedy by which the validity of classification is to be tested, then, unquestionably, submission to induction is a necessary part of the preliminary process; for not until the inductee is actually in the army is he deprived of his liberty so that habeas corpus will lie.

In the Goff case we were impressed with the thought that the validity of an order might be challenged wherever failure to comply with it was alleged. The Supreme Court has taken the view, however, that considering the dangers which might flow from delay in time of war, a reasonable interpretation of the Selective Service Act requires that orders of the draft board be complied with and all administrative remedies thereunder be exhausted before they may be challenged in the courts. This is in accord with the holding that the validity of OPA regulations may be challenged only after administrative procedures have been exhausted, and then only in a particular court. Cf. Yakus v. United States, 321 U.S. 414, 427-430, 64 S.Ct. 660, 88 L.Ed. 834. Among the advantages in cases such as this of limiting the remedy of the draftee to habeas corpus proceedings commenced after the administrative process has been completed, is that unnecessary delays in the raising of the army are avoided and questions which are primarily constitutional in character are heard before a judge without the distractions and uncertainties likely to accompany a criminal jury trial. Constitutional rights of citizens must, of course, be preserved in war as well as in peace; but the procedure outlined in the Falbo and Billings cases enables the courts to preserve them without unduly interfering with the war effort.

 An additional reason for sustaining the action of the trial court is that there was nothing tendered by defendant sufficient to show such a denial of due process

as would result in invalidity of the draft board's order. It was certainly for the board to say whether a college student eighteen years of age, majoring in engineering, and claiming to be a minister of religion merely because he distributed Bible literature and conducted Bible studies, was a minister of religion within the meaning of the Selective Service Act. See Smith v. Richart, D.C., 53 F.Supp. 582, 583, 584. The decision of the board was affirmed by the appeal board and by the President; and there was nothing offered to show that in any of the proceedings defendant was denied any constitutional right. Even if the rule of the Goff case be applied, therefore, there was no error; for it must be remembered that, with respect to the right to assert the invalidity of the board's order as a defense, we said in that case: "This does not mean that the court in a criminal proceeding may review the action of the board. That action is to be taken as final, notwithstanding errors of fact or law, so long as the board's jurisdiction is not transcended and its action is not so arbitrary and unreasonable as to amount to a denial of constitutional right."

There was no error and the judgment appealed from will be affirmed.

Affirmed