**Cleveland L. SELLERS, Jr., Appellant,**

v.

**Robert McNAMARA, etc., et al.,
Appellees.**

**No. 24654.**

United States Court of Appeals
Fifth Circuit.

July 23, 1968.

---

Charles Morgan, Jr., M. L. McDonald, Atlanta, Ga., for appellant.

Robert V. Zener, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., for appellees.

Before TUTTLE, BELL and SIMPSON, Circuit Judges.

PER CURIAM:

There are now pending before this panel of the court two matters relating to efforts made by the appellant to avoid induction into the armed services of the United States, and, in the alternative, to cause his release from his present incarceration under a conviction following a trial subsequent to a denial by this court of a stay of prosecution.

Since this case was submitted on oral argument, two facts have occurred which requires us to deny the relief sought both on the merits of the appeal from the order denying the injunction against his induction, and by his application for a stay of that denial, which, in effect, would amount to an order requiring that he be discharged from his present service of sentence following his conviction. These two facts are, (1) Sellers' trial, which resulted in his conviction, followed by his sentence to the custody of the Attorney General, followed further by a denial of bond pending appeal. The second is the decision by this court in the appeal of Cassius Marsellus Clay, Jr., a/k/a Muhammad Ali v. United States of America, 5 Cir., May 6, 1968, 397 F.2d 901.

There is a further fact, of more than ordinary judicial significance; Clay's motion for reconsideration of the decision of this court in his appeal by the court sitting en blanc, has also been denied.[1]

■ The principal argument made by Sellers on the merits of his appeal in this case have now been answered contrary to his contentions by the opinion of the court in the Clay case. These contentions will be more particularly discussed in a separate opinion filed by Judge Tuttle, a member of this court. Not only the rule of stare decisis, but the further weight that must be accorded a decision of the court as to which a petition for rehearing en banc has been denied, completely controls the disposition of this case on the merits. It also, perforce, concludes the issue now raised before us in the nature of a motion that this case also be heard by the entire court, sitting en banc.

The judgment of the trial court denying the temporary injunction against the prosecution of appellant Sellers, or his release if inducted pending a final disposition of the case, is affirmed.

■■ The motion for consideration of this case by the court en banc is denied. No member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 25 (a), subparagraph (b), the petition for rehearing en banc is denied.

TUTTLE, Circuit Judge, SEPARATE OPINION:

I, of course, agree with what is stated in the opinion of the court to the effect that the law of this circuit has now been established in the Clay case that neither the federal constitution nor the Selective Service Act deprives a local draft board of the power to perform all of the services required of it under the Act by reason of the fact that, although as

---

1. The Federal statute provides that upon the request of any active member of the court, the chief judge shall poll the court to ascertain whether a majority of the judges on active service vote in favor of a hearing or rehearing of a case en banc. 28 U.S.C.A. 46(c).

many as one third of the draft eligible persons dealt with are Negroes, the boards themselves are all white, or with a token number of Negro members.

I recognize, of course, that if this decision is wrong it is subject to review by the Supreme Court. Therefore, I would not normally write a separate opinion if it were not for the unusual procedural status of the case that has made it impossible for me to note my dissent in the normal way.[1]

Much of what troubles me is the difference in stance between the Clay case and the Sellers case, and the possibility that a basis of relief may be lost to appellant because of this difference. Briefly stated, this difference rises from (1) the fact that this is a direct attack brought by Sellers against those responsible for naming the draft boards, alleging that the boards are illegally constituted, and seeking to enjoin their functioning as to him, whereas (2) the Clay case came before our court as an appeal from a conviction in a criminal trial. This poses the question whether the alleged lack of jurisdiction of an "illegally" appointed board can be urged as a defense to a criminal prosecution, or whether the acts of such a board, ostensibly appointed and functioning under the statute, are valid as of a de facto tribunal when its decisions are brought in issues only by collateral attack.

In the Clay case, this court dealt with the attack on the jurisdiction of the allegedly illegally constituted draft boards on the merits, and thus treated the matter as one appropriate for consideration by a trial court as a defense to the criminal prosecution. However, in the case of DuVernay v. United States, 394 F.2d 979 (5 Cir.) [February 7, 1968], as I read it, even though expressed only in a footnote, it seems that this court held that the only way in which such a person as appellant can challenge the racial composition of the board is by *direct* attack; that the attack may not be made after the draftee is indicted for failure to be inducted. See footnote 6, DuVernay v. United States, supra.

If it should be determined by the Supreme Court that the attack upon the racial composition of the draft board may *not* be made as a defense to a prosecution, but can only be raised by a direct attack, then Sellers will have lost his opportunity to urge his defense on the merits, unless in this, the Sellers case, the point is adequately preserved for appeal.

I feel it appropriate, therefore, to express my separate view that had our court not foreclosed the matter for our consideration, I would conclude that the issue is one which should be raised by direct attack, and that the statute and the Constitution of the United States do forbid the practice which produces selective service boards of an entire state whose members are substantially all white, while classifying and ordering into service citizens of the state, approximately one third of whom are Negroes.[2]

In light of the Supreme Court's policy of not, at all times and under all circumstances, requiring immediate forthwith complete vindication as to each person of his constitutional rights, see Brown v. Board of Education of Topeka, Kansas, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, and the legislative reapportionment de-

---

1. This results from the fact that the petition by Clay for a rehearing of his appeal en banc was denied by the court under the provisions of 28 U.S.C.A. § 46 (c) following my retirement, and I was not a member of the court who was eligible to vote for en banc rehearing or note my dissent from the court's denial of the petition.

2. The statutory language which I think prohibits the appointment of such racially limited boards is that which requires that " * * * in the interpretation and *execution* of the provisions of this title [including the appointing of board members] * * * there shall be no discrimination against any person on account of race or color * * *" 50 U.S.C.A. App. § 455(a). (Emphasis added.)

cisions of the Supreme Court,[3] I would have held the board to have been illegally constituted and would have favored remanding the case to the trial court to make the initial determination as to what relief should be granted to a person who had brought the direct attack on the composition of the boards as did this appellant.

See also D.C., 258 F.Supp. 935, D.C., 275 F.Supp. 772.

3. Although the court in the Clay opinion says " * * * a draft board system which does not have a sufficiently representative number of Negro members is comparable to a malapportioned legislature," the court does not seem to recognize that unless such malapportionment is of constitutional dimensions the courts are powerless to act; but when they *do* act they require *r*eapportionment, even though not invalidating acts performed in the meantime.