**Simuel Brent SCHUTZ, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 24218.**

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1970.

Alvin J. Bronstein, James A. Lewis, Jackson, Miss., Melvin L. Wulf, New York City, for appellant.

Ben Hardeman, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before RIVES, COLEMAN, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

On September 7, 1966, the grand jury for the Middle District of Alabama charged that on or about May 4, 1966, Simuel Brent Schutz, Jr., unlawfully, wilfully, and knowingly did fail and neglect to perform a duty required of him under the Universal Military Training and Service Act [etc.] in that he did fail and neglect to comply with an order of his local board at Tuskegee to report at said board to submit to induction into the Armed Forces of the United States (Title 50 App. United States Code, § 462).

On October 20, 1966, represented by counsel of his own selection, Schutz waived trial by jury.

After trial on October 21, the District Judge found the defendant guilty as charged and sentenced him to serve three years in the custody of the Attorney General.

Schutz appealed and on September 27, 1967, moved this Court to stay further proceedings pending its decision in Sellers v. McNamara [398 F.2d 893, cert. denied June 16, 1969, 395 U.S. 950, 89 S. Ct. 2022, 23 L.Ed.2d 470].

Schutz's appeal was orally argued before this Court in Montgomery on October 15, 1969. Three years have thus elapsed between conviction and the hearing on appeal.

We affirm the judgment of the District Court.

Schutz registered on April 3, 1964, age eighteen. On June 3, 1964, he was classified 1–A. On September 11, 1964, he was given the Armed Forces physical examination and found acceptable for military duty.

Over a year later, on October 13, 1965, he received a 2–S classification as a full time student at Tuskegee Institute. On March 3, 1966, Tuskegee Institute in-

formed the draft board that the registrant was no longer a student. He had failed academically. On March 16 he was reclassified 1–A. On March 21 he was again examined and found acceptable. On April 18 the order was mailed to his correct address, directing him to report on May 4 for transportation to the Induction Center. It is admitted that on that day he did not appear.

At the opening of the trial before the District Judge, counsel for appellant made the following statement:

"Now, we at no time have claimed that he wasn't properly 1–A. The claim is that upon induction, upon being eligible for induction, he was classified and inducted into the Army by virtue of discriminatory processes. As a result of that his name was placed on the list above and before he should have come up in the ordinary course of things. As a result, the induction is the issue, and not the classification."

The Clerk of the draft board testified that Schutz did not appear on May 4. On May 5, the day after the other inductees had departed for the Induction Center by transportation provided for that purpose, Schutz did appear and stated that he was not going to report, that he was not going to be inducted. He further stated that on the previous day he had been in Lowndes County, Alabama, voting with the Black Panthers.

Schutz took the witness stand in his own defense. He admitted that on May 3, in Lowndes County, Alabama (about sixty miles from Tuskegee) Stokely Carmichael told him that he was to report for induction on May the third or fourth. He spent the day of May 4 "tabulating the returns of the election". He could not get a car to go to Tuskegee on the fourth because "cars were used for tabulating material on the fourth".

Schutz testified that he talked with an agent of the Federal Bureau of Investigation at the draft board office on May 5: "I told him, I said, whoever the officer was, that I am reporting for induction as ordered; but that I refuse to be inducted into the service on the grounds that I have personally been discriminated against, which lead back to March 21st, and that there are no Negroes on my Selective Service Board in Macon County [Tuskegee]".

He further testified that the last address given the local board was Route 2, Box 154–A, Tuskegee, his father's home. He had not changed his address before being ordered to report. He offered no explanation for failing to receive a notice mailed to him on April 18 at the same post office where he received his mail. Neither did he explain the memorandum in his Selective Service file, which was introduced in evidence, indicating that on May 4 his father did go to the draft board office, where he stated that his son had received the notice to report but was not going to do so.

Schutz's statement on May 5 that he was "reporting for induction as ordered" was quite inaccurate. He had been ordered to report on May 4, not May 5. By his own admission he knew of the order on May 3. He chose, however, to pursue his personal activities in Lowndes County.

Moreover, his testimony deprives him of the benefit of any inadvertence or excusable delay. He advised both the clerk of the draft board and the F.B.I. Agent on May 5 that he did not intend to be inducted. Therefore, on May 5 he did not report for induction, but to the contrary. Nor did he, then or afterwards, offer to report for induction at any future date.

 Rather than report for induction, Schutz chose to rely on the claim that he was immune to the draft because there were no Negroes on his draft board. This defense has repeatedly been rejected. Clay v. United States, 5 Cir., 1968, 397 F.2d 901; Sellers v. McNamara, supra; DuVernay v. United States, 5 Cir., 1968, 394 F.2d 979, affirmed 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306, reh. denied 395 U.S. 917,

89 S.Ct. 1740, 23 L.Ed.2d 232 (1969); Greer v. United States, 5 Cir., 1967, 378 F.2d 931.

█ Nor could appellant refuse to report for induction on the claim that he had been called out of turn. Every registrant is required to report for induction as ordered even though he may have valid legal grounds for refusing to submit to induction, United States v. Irons, 6 Cir., 1966, 369 F.2d 557, 559; Nickerson v. United States, 10 Cir., 1968, 391 F.2d 760, 763, cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366.

█ This appellant was convicted of failing to report for induction as ordered, not for refusing to be inducted after arrival at the induction center. Therefore, we do not discuss the cases which have dealt with the latter situation, other than to say that wilful refusal to report for induction is a separate offense. Upon such a refusal the Selective Service authorities are under no duty forcibly to convey a recalcitrant to the induction center in order that he may there be subjected to the procedures required for actual induction.

█ This conviction is fortified by abundant support in the evidence and the judgment is

Affirmed.

RIVES, Circuit Judge, dissenting:

Schutz was convicted for unlawfully, willfully, and knowingly failing to perform a duty required of him by Section 12 of the Military Selective Service Act[1] in that he failed to comply with an order of his local board "to report at said Board * * * to submit to induction * * *" My brothers have affirmed

the conviction. In dissenting, I am of the opinion that the conviction must be reversed for two reasons: (1) The conviction is not supported by sufficient evidence, and (2) the district court erred in excluding all evidence of bias in the process of Schutz's induction into the armed forces.

### Sufficiency of Evidence

On April 18, 1966, Local Board 44 at Tuskegee, Alabama, mailed an order to report for induction (and for transportation to the Induction Center) on May 4, 1966, to Schutz, who at the time was involved in a voter registration campaign with the Student Nonviolent Coordinating Committee in Lowndes County, Alabama. On May 3, 1966, a friend informed Schutz that he was to report for induction on either May 3 or May 4.[2] During the day of May 4, Schutz was unable to obtain transportation from Lowndes County to his Local Board in Macon County, a distance of about 60 miles. On the evening of May 4, Schutz obtained transportation to Tuskegee, and reported to his Local Board the following morning, May 5.

Upon entering the office, Schutz told the clerk, Mrs. Sarah Booth, that he was "not going to be inducted."[3] The clerk then left the office and returned with three FBI agents. Schutz informed the agents that: "I am reporting for induction as ordered; but that I refuse to be inducted into the service on the grounds that I have personally been discriminated against, which led back to March 21st, and that there are no Negroes on my Selective Service Board in Macon County." Schutz asked if he was under arrest and received a nega-

---

1. Selective Service Act of 1948, § 12, 62 Stat. 622, as amended, now § 12 of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 462.

2. Schutz testified that his friend's message on May 3 was the first information he had received of his induction notice. In his Selective Service file there was a statement by his father on May 4 that Schutz had received his induction call.

3. Mrs. Booth initially testified that Schutz upon entering the Local Board office stated that he was not going to report. She then corrected her testimony to the effect that Schutz had stated "[t]hat he was not going to be inducted." When cross-examined about Schutz's statement, she testified that "he had told [her] that he was not going to be inducted." Schutz testified that he told Mrs. Booth that he was reporting for induction as ordered.

tive reply. At no time did anyone at the Local Board discuss transporting Schutz to the Armed Forces Induction Center or inform him of the consequences of refusing induction.

Schutz was indicted and convicted for failing to report at his Local Board to submit to induction.[4] His contention here on appeal is that the conviction is unsupported by sufficient evidence of the requisite criminal intent.[5] The government concedes that one day's tardiness in reporting for induction, standing alone, would not be sufficient to establish the requisite criminal intent. The government argues, however, that Schutz's appearance at the Local Board office, coupled with his statement that he refused to be inducted, constitutes a willful and knowing failure to report for induction.

My brothers in affirming the conviction conclude that Schutz did not report for induction on May 5. Although Schutz reported to his Local Board, they view his statement that he refused to submit to induction as a refusal to report for induction.

It is well established that in a failure-to-report violation under 50 U.S.C.A. App. § 462, the government must prove a willful and knowing failure to report for induction.[6] The critical issue is whether or not Schutz's appearance on May 5, coupled with his statement of refusal to submit to induction (that he was reporting for induction as ordered but refused to be inducted), is a willful and knowing refusal to report for induction. My brothers answer this question in the affirmative; I would answer it in the negative.

Schutz was ordered by his Local Board to report for induction on May 4, 1966. He did not report on May 4 but did appear at his Local Board during the morning of May 5. I agree with the government that his delay of one day is not sufficient to establish the requisite criminal intent. But Schutz's statement upon arrival—that I am reporting for induction as ordered but refuse to submit to induction—is also insufficient evidence of the requisite criminal intent —a willful and knowing refusal to report for induction.

Section 12 of the Selective Service Act, 50 U.S.C.A. App. § 462, makes criminal a willful failure to perform any duty required by the Act or by regulations promulgated thereunder. An order to report for induction is such a duty and includes not only a duty to report at a certain date and hour but also a duty

4. At first blush, the indictment ("that the Defendant did fail and neglect to comply with an order of his Local Board at Tuskegee, Alabama to report at said Board at Tuskagee, Alabama, to submit to induction into the Armed Forces of the United States of America") appears to be unclear as to whether or not Schutz was prosecuted and convicted for failing to report or for failing to submit to induction. The government both in oral argument and in its brief contends that Schutz was convicted for failing to report and not for failing to submit to induction. If the conviction were for failing to submit to induction, Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955), would require its reversal. *See also* Edwards v. United States, 395 F.2d 453 (9th Cir. 1968); Parrott v. United States, 370 F.2d 388, 395 (9th Cir. 1966).

5. Although Schutz did not move for judgment of acquittal at the conclusion of all the evidence, in a nonjury trial such a motion is not required in order for an appellate court to review the sufficiency of the evidence. United States v. Besase, 373 F.2d 120 (6th Cir. 1967); Hall v. United States, 286 F.2d 676 (5th Cir. 1960).

6. United States v. Rabb, 394 F.2d 230, 232 (3d Cir. 1968) ("voluntarily, with knowledge that it was prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith"); Graves v. United States, 252 F.2d 878, 881 (9th Cir. 1958); Candler v. United States, 146 F.2d 424, 426 (5th Cir. 1944) ("evidence is as consistent with innocence as with guilt, and fails signally to show *willful intent*"); see Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953).

to submit to induction.[7] If a registrant, having received his notice to report for induction, fails to appear at the local board, or appears at the local board but expresses an unwillingness to report, see Simmons v. United States, 406 F.2d 456 (5th Cir.1969), he has violated 50 U.S.C.A. App. § 462 for failing to report for induction. If a registrant appears pursuant to his induction notice at the local board but refuses to take the "step forward" during the induction process, he has violated 50 U.S.C.A. App. § 462 for refusing to submit to induction.

Once a registrant arrives at the local board, the regulations provide that he must follow certain procedures, the first of which is "to follow the instructions of a member or clerk of the local board as to the manner in which he shall be transported to the location where his in-

duction will be accomplished."[8] 32 C.F.R. § 1632.14(b). If a registrant reports for induction at his local board but states that he refuses to submit to induction, I would agree that there is no duty forcibly to convey him to the induction center, but he should be given an opportunity to comply with the procedures enumerated in Regulation 1632.-14(b). If he refuses to obey these orders, e.g., transportation to the induction center, he can be prosecuted under 50 U.S.C.A. App. § 462 for violating his duty to obey this specific order.

In this case, at no time after his arrival at the Local Board did the clerk give Schutz an opportunity to comply with the procedures in Regulation 1632.-14(b). No arrangements were made for his transportation to the induction center, and no alternative date for induction was assigned.[9] The only informa-

---

7. Estep v. United States, 327 U.S. 114, 119, 66 S.Ct. 423, 90 L.Ed. 567 (1946); see Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, 88 L.Ed. 917 (1944).

The government relies on Smith v. United States, 148 F.2d 288, 290 (4th Cir. 1945), rev'd on other grounds, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), for the meaning of "report for induction"; "To report for induction means to present oneself not only at the appointed place but also in readiness to go through 'the process which constitutes induction into the army.'" See also United States v. Collura, 139 F.2d 345 (2d Cir. 1943). To the extent Smith and Collura would allow a conviction for failing to report where a registrant appeared at his local board but was not given an opportunity to comply with the procedures in Regulation 1632.14(b) because he refused to submit to induction, I cannot agree with them. See United States v. Kurki, 384 F.2d 905 (7th Cir. 1967) (dissenting opinion).

8. The other procedures prescribed in Regulation 1632.14(b) are:

"(2) to obey the instructions of the leader or assistant leaders appointed for the group being forwarded for induction,

"(3) to appear at the place where his induction will be accomplished,

"(4) to obey the orders of the representatives of the Armed Forces while at the place where his induction will be accomplished,

"(5) to submit to induction, and

"(6) if he is found not qualified for induction to follow the instructions of the representatives of the Armed Forces as to the manner in which he will be transported on his return trip to the local board."

9. Having failed to report for induction on May 4, Schutz was under a continuing duty to report. 32 C.F.R. § 1632.14(a). After reporting on May 5, the Local Board was obligated to initiate the procedures prescribed in Regulation 1632.14(b) or to set an alternative date for induction.

This Court in a recent decision, United States v. Preston, 420 F.2d 60 (5th Cir. 1969), found sufficient evidence to support a conviction for failing to report for induction, relying on a recalcitrant registrant's violation of his continuing duty to report for induction. See 32 C.F.R. § 1632.14(a).

In this case Preston is not controlling. Because he failed to report on May 4, Schutz was thereafter under a continuing duty to report. However, when he reported on May 5, the Local Board made no attempt to arrange transportation to the induction center or to set an alternate

tion which Schutz received was that he was not under arrest and that he was not to leave his local address in Tuskegee. ("to be always where we would keep in touch").

Therefore, Schutz's appearance at the Local Board on May 5 with the statement that he was reporting for induction as ordered but refused to submit to induction is insufficient evidence to support a conviction for willfully and knowingly failing to report for induction. Before Schutz could be convicted for violating 50 U.S.C.A. App. § 462, he must have been given an opportunity to comply with the procedures enumerated in Regulation 1632.14(b).[10]

In addition to the above discussion that there was insufficient evidence of a knowing and willful failure to report

for induction, I am also of the opinion that the district court erred in excluding all evidence of bias in the process of Schutz's induction into the armed forces. This error which would require a new trial is discussed only in the alternative to the above discussion which would require reversal and acquittal.

### Bias in Order of Call

Schutz's counsel at the opening of the trial explained that Schutz was not disputing the validity of his I–A classification but was challenging the process by which his Local Board had ordered him to report for induction. Specifically, he contended that his notice to report for induction was issued discriminatorily and not in accordance with the "order of call" procedures in Regulation 1631.7.[11]

---

induction date. The Board even intimated that Schutz should remain at his local address where he would be contacted at a later date. Under these circumstances, Schutz satisfied his continuing duty to report when he reported on May 5.

10. The government, relying on United States v. Kurki, 384 F.2d 905 (7th Cir. 1967), contends that the procedures in Regulation 1632.14(b) are inapplicable. *Kurki* is distinguishable from this case. There the defendant convicted for failing to report actually stated upon his arrival at the local board that he was not reporting for induction. In dictum the court noted that regulations referring to instructions of a clerk of the local board and transportation procedures, 32 C.F.R. § 1632.14, were inapplicable. "They apply only to [registrants] who report for induction." 384 F.2d at 907.

In dissenting, Judge Kiley concluded that the record was not sufficient to prove the essential element of willfulness beyond a reasonable doubt. Under the rationale of Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955):

"I would hold that where a registrant has entered the premises of the Local Board on the day appointed, he cannot be convicted of failure to report unless warnings adequate under *Chernekoff* are given or unless his subsequent departure was in no way caused by draft board officials."

384 F.2d at 909.

11. Regulation 1631.7(a) provides, in part:

"1631.7 *Action by Local board upon receipt of notice of call.*

"(a) When a call is placed without designation of age group or groups, each local board, upon receiving a Notice of Call on Local Board (SSS Form No. 201) from the State Director of Selective Service (1) for a specified number of men to be delivered for induction * * * shall select and order to report for induction the number of men required to fill the call from its registrants who have been classified in Class I–A and Class I–A–O and have been found acceptable for service in the Armed Forces and to whom the local board has mailed a Statement of Acceptability (DD Form No. 62) at least 21 days before the date fixed for induction: * * * Such registrants, including those in a medical, dental, or allied specialist category, shall be selected and ordered to report for induction in the following order:

"(1) Delinquents who have attained the age of 19 years in the order of their dates of birth with the oldest being selected first.

"(2) Volunteers who have not attained the age of 26 years in the sequence in which they have volunteered for induction.

"(3) Nonvolunteers who have attained the age of 19 years and have no [sic] attained the age of 26 years and who (A) do not have a wife with whom they maintain a bona fide family rela-

Schutz attempted to introduce evidence that he was ordered to report for induction "out of order." He filed a motion to subpoena the records of his Local Board and in particular the Selective Service files of other registrants. During cross-examination of the Local Board clerk, Schutz's counsel attempted to question her on the procedures which she used in determining who should receive induction notices.

The district court denied the motion to subpoena the Local Board's records and prohibited any inquiry into Schutz's allegation that he was ordered to report for induction contrary to the order of call prescribed in Regulation 1631.7. The court apparently concluded that evidence of discrimination could not be introduced since Schutz had not exhausted administrative remedies, *i.e.*, that he had not reported for induction and had not brought himself to the "brink of induction" before refusing to submit to induction.

The government contends that Schutz cannot raise the defense that he was called for induction incorrectly, *i.e.*, out of the normal order of call established by Regulation 1631.7. Relying on United States v. Irons, 369 F.2d 557 (6th Cir.1966) and Moore v. United States, 302 F.2d 929 (9th Cir.1962), the government argues that this defense cannot be raised when a registrant "is charged with failure to report for induction and where he did not report for induction, submit to the various steps

until he has been finally accepted for military service, and then refuse to submit to induction."

My brothers concluded that Schutz was prohibited from raising this defense, stating that "[e]very registrant is required to report for induction as ordered even though he may have valid legal grounds for refusing to submit to induction * * *."

I am of the opinion that the district court erred in prohibiting Schutz from raising an "order of call" defense. Indicted for failing to report for induction, Schutz should be permitted to raise the defense that his Local Board in ordering him to report for induction failed to follow the order of call procedures enumerated in Regulation 1631.7.

Initially, it should be pointed out that Schutz did not fail to exhaust internal administrative remedies. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944). He did not claim that he had been *classified* I–A incorrectly; but contended that he had been called incorrectly, *i.e.*, out of the normal order of call established by Regulation 1631.7. Thus, Schutz attacked the validity of his induction notice from which there is no administrative right of appeal for improper order of call. See Yates v. United States, 404 F.2d 462, 466 (1st Cir. 1968).

Also, without merit is the contention that Schutz failed to exhaust adminis-

tionship in their homes, in the order of their dates of birth with the oldest being selected first, or (B) have a wife whom they married after the effective date of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their dates of birth with the oldest being selected first.

"(4) Nonvolunteers who have attained the age of 19 years and have not attained the age of 26 years and who have a wife whom they married on or before the effective date of this amended subparagraph and with whom they maintain a bona fide family relationship in their homes, in the order of their

dates of birth with the oldest being selected first.

"(5) Nonvolunteers who have attained the age of 26 years in the order of their dates of birth with the youngest being selected first.

"(6) Nonvolunteers who have attained the age of 18 years and 6 months and who have not attained the age of 19 years in the order of their dates of birth with the oldest being selected first. In selecting registrants in the order of their dates of birth, if two or more registrants have the same date of birth they shall, as among themselves, be selected in alphabetical order."

trative processing, *i.e.*, that he failed to report and proceed through the induction process up to the point of taking the final "step forward." McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), demonstrates that Schutz's failure to report for induction should not have foreclosed his raising the order of call issue at trial. In *McKart* the registrant, convicted for failing to report for his preinduction physical and for failing to report for induction, contended that his local board had erroneously denied his claim for a IV–A classification. The Court held that his failure to exhaust administrative processing by reporting for the preinduction physical, and *a fortiori* by reporting for induction, did not preclude an erroneous-classification defense to his alleged violation of 50 U.S.C.A. App. § 462 for failing to report. 395 U.S. at 201–203, 89 S.Ct. 1657. Therefore, the district court erred in prohibiting Schutz's attempt to establish the defense that he was ordered to report "out of order."[12]

Having concluded that the district court erroneously denied Schutz's attempt to raise the "order of call" defense, I would like only to point out that the "order of call" defense—that orders to report for induction must be issued in a specified order under Regulation 1631.7—is well established. United States v. Baker, 416 F.2d 202 (9th Cir.

1969); Little v. United States, 409 F. 2d 1343 (10th Cir.1969); Yates v. United States, 404 F.2d 462 (1st Cir.1968); United States v. Sandbank, 403 F.2d 38 (2d Cir.1968). See also Campbell v. United States, 396 F.2d 1 (5th Cir. 1968); Greer v. United States, 378 F. 2d 931 (5th Cir.1967).[13]

The government, however, does not have to establish that the order of call was proper in order to meet its burden of proof for a conviction under 50 U.S. C.A. App. § 462. This Court in Greer v. United States, *supra*, declared that a presumption exists that the order of call used by the local board was correct "in the absence of any evidence to the contrary." 378 F.2d at 933. A registrant, however, should be allowed to introduce evidence in an attempt to establish an order of call defense before the district court can determine whether he has rebutted the presumption of regularity. *See* United States v. Baker, *supra;* Yates v. United States, *supra*.

Because the district court, under the mistaken belief that Schutz was required to complete administrative processing to the extent of reporting for and completing the induction process except for the final "step forward," erred in prohibiting all attempts to establish the "order of call" defense, a new trial is required.

Upon both grounds, I respectfully dissent.

12. Other courts without discussing exhaustion of administrative processing have allowed this defense to be raised where registrants were convicted for failing to report for induction. United States v. Baker, 416 F.2d 202 (9th Cir. 1969); Little v. United States, 409 F.2d 1343 (10th Cir. 1969); United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968).

13. The Ninth Circuit in *Baker* emphasized the importance of the order of call procedures:

"Manifestly, the order of call affects registrants' substantial rights. Indeed

Congress has regarded the matter as so vital to the fairness of the operation of the Selective Service System that it enacted legislation prohibiting an administrative change of the present method of determining the relative order of induction within the specified age groups. 50 U.S.C.App. § 455(a) (2). And we hold that a strict compliance is essential to the validity of an Order to Report for Induction."
416 F.2d at 204–205.