UNITED STATES *v.* GREEN ET AL.

No. 54.   Argued February 27, 1956.—Decided March 26, 1956.

*Oscar H. Davis* argued the cause for the United States. On the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Beatrice Rosenberg* and *Carl H. Imlay.*

*Arthur M. Fitzgerald* argued the cause for appellees. With him on the brief were *Schaeffer O'Neill* and *William P. Roberts.*

MR. JUSTICE REED delivered the opinion of the Court.

An indictment was found in the Southern District of Illinois against appellees Green and a local union. The jury adjudged them guilty under counts one and two thereof. The court sustained their separate motions in arrest of judgment, setting out in its order that its action was "solely" on the following grounds:

"2. This court is without jurisdiction of the offense.

"(b) The facts alleged in the Indictment failed to set forth an offense against the United States such as to give this Court jurisdiction.

"(c) A proper construction of the statute in question clearly indicates that it does not cover the type of activity charged in this indictment; to interpret the Act in question as covering the type of activity charged in this Indictment is to extend the jurisdiction of this Court and the power of Congress beyond their Constitutional limits."

Appeal was taken by the United States directly to this Court under 18 U. S. C. § 3731.[1] We noted probable jurisdiction. 350 U. S. 813.

The two counts in question were based upon alleged violations of 18 U. S. C. § 1951, popularly known as the Hobbs Act. The pertinent statutory provisions are subsections (a) and (b)(2) thereof, reading as follows:

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any

---

[1] "An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

.          .          .          .          .

"From a decision arresting a judgment of conviction for insufficiency of the indictment or information, where such decision is based upon the invalidity or construction of the statute upon which the indictment or information is founded."

article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

"(b) . . .

"(2) The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

Each of the two counts charged appellees with acts of extortion under § 1951 directed against a different employer. The extortions alleged consisted of attempts to obtain from the particular employer

"his money, in the form of wages to be paid for imposed, unwanted, superfluous and fictitious services of laborers commonly known as swampers, in connection with the operation of machinery and equipment then being used and operated by said [employer] in the execution of his said contract for maintenance work on said levee, the attempted obtaining of said property from said [employer] as aforesaid being then intended to be accomplished and accomplished with the consent of said [employer], induced and obtained by the wrongful use, to wit, the use for the purposes aforesaid, of actual and threatened force, violence and fear made to said [employer], and his employees and agents then and there being; in violation of Section 1951 of Title 18, United States Code."

Appellees each filed motions for acquittal or in the alternative for a new trial. These the trial court specifically denied. The opinion of the trial court, 135 F.

Supp. 162, says nothing as to failure of evidence to support the allegations of the indictment, or as to trial errors. Instead the court relied upon the absence of criminality in the acts charged, and it was therefore logical for the trial court to deny acquittal and new trial.[2]  The court thought persuasive our recent cases which held union efforts to secure "made work" for their members were not unfair labor practices.[3]  From its view that extortion as defined in the Hobbs Act covers only the taking of property from another for the extortioner's personal advantage, the necessity to arrest the judgment followed.  Rule 34, Fed. Rules Crim. Proc.

We do not agree with that interpretation of the section. The Hobbs Act was passed after this Court had construed § 2 of the Federal Anti-Racketeering Act of 1934, 48 Stat. 979, in *United States* v. *Local 807,* 315 U. S. 521.  Subsection (a) of § 2 barred, with respect to interstate commerce, exaction of valuable considerations by force, violence or coercion, "not including, however, the payment

---

[2] The opinion states:

"It is now contended that the Indictment does not state a cause of action within the meaning of the above section.  In the usual extortion case, the extorter is obtaining money or property of another for his own benefit. . . .  In the case at hand, I conclude that Green's original activity in 'attempting to obtain from Arthur W. Terry, Jr., his money in the form of wages to be paid for imposed, unwanted, superfluous and fictitious services of laborers' which said charge was seriously controverted, was of itself not a violation of this statute, and within his rights and responsibilities as a Union representative, which was not prohibited by this statute.

".  .  .  .  .

". . . I conclude that the trouble in this Community and on this particular job was caused by a disagreement between the contractor and labor, and was in no wise an attempt to extort for the use of either the Union or the Defendant Green, any money or property of the contractor." 135 F. Supp., at 163, 164.

[3] See *American Newspaper Publishers Association* v. *Labor Board,* 345 U. S. 100; *Labor Board* v. *Gamble Enterprises,* 345 U. S. 117.

of wages by a bona-fide employer to a bona-fide employee." We held in *Local 807* that this exception covered members of a city truck drivers' union offering superfluous services to drive arriving trucks to their city destination with intent, if the truck owners refused their offer, to exact the wages by violence.[4] In the Hobbs Act, 60 Stat. 420, carried forward as 18 U. S. C. § 1951, which amended the Anti-Racketeering Act, the exclusion clause involved in the *Local 807* decision was dropped. The legislative history makes clear that the new Act was meant to eliminate any grounds for future judicial conclusions that Congress did not intend to cover the employer-employee relationship.[5] The words were defined to avoid any misunderstanding.

Title II of the Hobbs Act provides that the provisions of the Act shall not affect the Clayton Act, §§ 6 and 20,

---

[4] The exception was held also to permeate the entire Act. P. 527, n. 2.

[5] Beginning soon after our decision in the *Local 807* case, a series of bills was introduced in Congress looking toward an amendment to the Anti-Racketeering Act of 1934. S. 2347, 77th Cong., 2d Sess.; H. R. 6872, 77th Cong., 2d Sess.; H. R. 7067, 77th Cong., 2d Sess.; H. R. 653, 78th Cong., 1st Sess.; H. R. 32, 79th Cong., 1st Sess. The last of these bills, H. R. 32, *supra,* was enacted and became the Hobbs Act, 62 Stat. 793. The House Committee on the Judiciary, in its report on H. R. 32, stated:

"It is not the intention of the committee that title III [enacted as title II] be interpreted as authorizing any unlawful acts, particularly those amounting to robbery or extortion. The need for the legislation was emphasized by the opinion of the Supreme Court in the case of *United States* v. *Local 807* (315 U. S. 521)." H. R. Rep. No. 238, 79th Cong., 1st Sess., p. 10. See also S. Rep. No. 1516, 79th Cong., 2d Sess.

Each of the prior bills had the same purpose—amending the Anti-Racketeering Act so as to change the terms which brought about the result reached in the *Local 807* case. See H. R. Rep. No. 2176, 77th Cong., 2d Sess.; H. R. Rep. No. 66, 78th Cong., 1st Sess. And see 91 Cong. Rec. 11842, 11843, 11909, 11911, 11919, 11920.

38 Stat. 731, 738; the Norris-LaGuardia Act, 47 Stat. 70; the Railway Labor Act, 44 Stat. 577; or the National Labor Relations Act, 49 Stat. 449.[6] There is nothing in any of those Acts, however, that indicates any protection for unions or their officials in attempts to get personal property through threats of force or violence. Those are not legitimate means for improving labor conditions.[7] If the trial court intended by its references to the Norris-LaGuardia and Wagner Acts to indicate any such labor exception, which we doubt, it was in error. Apparently what the court meant is more clearly expressed by its statement, set out in the last paragraph of note 2 above, that the charged acts would be criminal only if they were used to obtain property for the personal benefit of the union or its agent, in this case Green. This latter holding is also erroneous. The city truckers in the *Local 807* case similarly were trying by force to get jobs and pay from the out-of-state truckers by threats and violence. The Hobbs Act was meant to stop just such conduct. And extortion as defined in the statute in no way depends upon having a direct benefit conferred on the person who obtains the property.

It is also stated in the opinion below that to interpret the Act as covering the activity charged would "extend the jurisdiction of the Court, and the power of Congress beyond their Constitutional limits." 135 F. Supp., at 162. The same language is in the order. Since in our view the legislation is directed at the protection of interstate commerce against injury from extortion, the court's holding is clearly wrong. We said in the *Local 807* case

---

[6] The Hobbs Act was enacted prior to the Labor Management Relations Act of 1947.

[7] Cf. *United States* v. *Ryan,* 350 U. S. 299; *United Construction Workers* v. *Laburnum Corp.,* 347 U. S. 656; *Allen-Bradley Local* v. *Wisconsin Board,* 315 U. S. 740; *Labor Board* v. *Fansteel Corp.,* 306 U. S. 240; *United States* v. *Kemble,* 198 F. 2d 889.

that racketeering affecting interstate commerce was within federal legislative control. 315 U. S., at 536. Cf. *Cleveland* v. *United States*, 329 U. S. 14, 19; *Mitchell* v. *Vollmer & Co.*, 349 U. S. 427.

On this appeal the record does not contain the evidence upon which the court acted. The indictment charges interference with commerce by extortion in the words of the Act's definition of that crime. We rule only on the allegations of the indictment and hold that the acts charged against appellees fall within the terms of the Act. The order in arrest of judgment is reversed and the cause remanded to the District Court.

*It is so ordered.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK concur, dissenting.

The Government has no right to a direct appeal to this Court under 18 U. S. C. § 3731 if the District Court judgment "was not placed *solely* upon the invalidity or construction of the statute." *United States* v. *Wayne Pump Co.*, 317 U. S. 200, 208. (Italics added.) The presence of any additional and independent ground for the District Court's order is fatal to direct review here. I am convinced that there is such an independent ground for the District Court's judgment in this case. It is evident from the district judge's memorandum opinion (135 F. Supp. 162) that his order granting the motions in arrest of judgment rested at least in part upon the insufficiency of the evidence to support the conviction. He considered facts not alleged in the indictment, *e. g.*, that contractors in the community had customarily agreed to the employment of labor which allegedly was demanded by appellees, and that the trouble on the particular job was caused by a disagreement between the contractor and labor, not by an attempt to extort. I would therefore dismiss the Government's appeal.