**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence WENDT, Defendant-Appellant.**

**No. 71–1976.**

United States Court of Appeals,
Ninth Circuit.

Dec. 3, 1971.

Jerry E. Berg, of Collins, Hays, Stewart, Sanford, Berg & Pott, San Jose, Cal., for defendant-appellant.

James L. Browning, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MADDEN,* Judge, United States Court of Claims, CARTER and WRIGHT, Circuit Judges.

### J. WARREN MADDEN, Judge:

The appellant, Wendt, having been indicted for wilfully and knowingly refusing to submit to induction in violation of the Selective Service Act of 1967, was tried and found guilty on March 12, 1971, in the United States District Court for the Northern District of California. On April 9, 1971, that Court sentenced Wendt to three years probation with two years of that time to be spent in alternate civilian work of national importance. Wendt has appealed to this Court from the judgment of the District Court.

On December 18, 1967, Selective Service sent to appellant a notice by mail directing him to report on January 2, 1968, for his Armed Forces Physical Examination. That direction was modified and he was, on April 15, 1968, given a complete physical examination and was found to be fully qualified, at that time, for induction into the Armed Forces. Selective Service on May 9, 1968, mailed to appellant a formal statement that he had been found acceptable.

*The Evidence of Refusal to Submit to Induction*

On February 11, 1969, appellant's Local Selective Service Board received a letter from the appellant inquiring about the status of an appeal from his classification which appeal had been previously requested. The letter expressed the low opinion which the appellant entertained concerning the Selective Service System and the Armed Forces.

On June 3, 1969, the appellant was classified I–A, by the appropriate Appeals Board.

On June 4, 1969, the Local Board received a letter from the appellant dated June 1, 1969, in which letter appellant enclosed his Selective Service Registration Certificate (Draft Card) and his Notice of Classification. He said in the letter that he intended not to cooperate further with the Selective Service System, and he expressed his distaste for colleges and universities, for the Selective Service System, and for the Armed Forces and military discipline.

On July 17, 1969, an Order to Report for Induction was mailed to appellant, directing him to report on August 6, 1969. He appeared on August 6, but refused to submit to medical examination, thereby preventing his actual induction into the Armed Forces.

* Honorable J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

After appellant's indictment for the crime of refusing to submit to induction, in violation of the Selective Service Act of 1967, it became necessary for the Government to prove, at the trial of the appellant on the indictment that he had in fact refused to submit to induction. The appellant urges, in the appeal now before us, that the Government did not prove that crucial fact. The Government says that it did put in, at the trial, evidence that the appellant did in fact refuse to submit to induction. That evidence was a letter from the Assistant Adjutant of the Armed Forces Examining and Entrance Station which letter stated that the appellant had refused to submit to induction. The appellant says that the Assistant Adjutant's letter was nothing more than written hearsay, inadmissible in evidence by reason of the "Hearsay Rule". The Government responds that the kind of hearsay involved in the Assistant Adjutant's letter is admissible under an "Exception" to the "Hearsay Rule" which exception has been created by this Court in prior decisions. The Government cites United States v. Lloyd, 9th Cir., 431 F.2d 160 (1970) and LaPorte v. United States, 9th Cir., 300 F.2d 878 (1962). It was decided in these prior cases that an authenticated copy of a registrant's Selective Service file, including letters and documents in the file, is admissible in evidence when the registrant is charged with a violation of the Selective Service Act. The Government also urges that the letter in question was admissible under the statutory exception to the Hearsay Rule contained in § 1733 of Title 28 U.S.C. We do not decide the question of the admissibility of the letter on the alternative ground urged by the Government.

There is no real question as to the appellant's refusal to submit to induction. The appellant raised the question, as he had a right to do, in order to test the admissibility of the Government's evidence that he had committed the crime of which he was charged. We have held, above, that the evidence was admissible.

## The Time of the Appellant's Physical Examination

The appellant argues that his Local Selective Service Board, when it issued its order to him to report for induction violated 32 Code of Federal Regulations [C.F.R.] 1631.7(a) when it issued that order because the order was issued more than one year after appellant's last pre-induction physical examination. We have said hereinabove, that the Local Board had directed the appellant to report for his Armed Forces Physical Examination; that he had so reported and, on April 15, 1968, had been given a complete physical examination and had been found fully qualified, at that time, for induction into the Armed Forces; that, on May 9, 1968, his Local Board had mailed to the appellant a formal notice that he had been found acceptable.

The Board's Order to Report for Induction, had, as we have seen, been issued on July 17, 1969, and had set August 6, 1969, as the date on which he was to report. He did report on that date, which date was more than one year after April 15, 1968, the date on which he had had his physical examination, and more than one year after May 9, 1968, the date on which he had been formally notified of his acceptability for service.

The appellant cites Army Regulation [AR] 40–501, Ch. 10, § 10–17, which says:

a. Medical examinations will be valid for the purpose and within the periods set forth below provided there has been no significant change in the individual's medical condition.

(1) One year from date of medical examination to qualify for induction.

\* \* \* \* \* \*

When, on August 6, 1969, the appellant appeared at the induction station, he was asked by the Army to submit to a physical examination. He refused. The record does not show what reason, if any, he gave for his refusal. In a let-

ter to his Local Board received February 11, 1969, he had said emphatically that he would no longer cooperate with the Board. The effect of the appellant's refusal to be physically examined by the Army made it impossible for him to be inducted into the Army, and was a refusal to be inducted.

■ The appellant argues that his refusal to submit to the physical examination was justified because the Selective Service Administration was proposing that he take his physical examination on August 6, and, if he passed the examination, he was, on that same day, to be inducted into the Army. He quotes 32 C. F.R. 1631.7(a), which is a Selective Service Regulation, which says:

> Each local board, upon receiving a Notice of Call on Local Board (SSS Form No. 201) from the State Director of Selective Service (1) for a specified number of men to be delivered for induction . . . shall select and order to report for induction the number of men required to fill the call from among its registrants who have been classified in Class I–A and Class I–A–O and have been found acceptable for service in the Armed Forces and to whom the local board has mailed a Statement of Acceptability (DD Form 62) at least 21 days before the date fixed for induction . . .

The appellant says that for him to have been physically examined and, on the same day, been inducted into the Army would have deprived him of the 21 days notice to which he was entitled under the Regulation quoted above. The appellant urges that the effect of that deprivation would have been to deny to him whatever administrative review of his physical examination and classification as acceptable for Army Service might have been available.

The Government's response to appellant's argument is that appellant had had his physical examination, as directed by Selective Service, on April 15, 1968, and had been formally notified of his acceptability, on May 9, 1968, had been classified in Class I–A since June 3, 1969, and that during all those intervening months any administrative review of his physical condition had been available to him, but no such review had been sought. It is worth noting that the appellant never has, and does not now, assert that any error or impropriety occurred with regard to his physical examination or condition.

The Government points out that the Army Regulations themselves recognize that the physical examination required by 32 C.F.R. § 1631.7(a) by which Selective Service ascertains the number of physically acceptable persons in its area, is for a purpose different from the Army's examinations of persons presently about to be inducted into the Army. A.R. 601–270, Ch. 3, § 3–18(a) provides, with regard to Selective Service Registrants:

> If the lapse of time between the preinduction examination and the appearance of the registrant for induction is more than one year, another complete medical examination is required to determine acceptability for induction.

This Army Regulation contains, of course, no intimation that the Selective Service System, and its laboriously devised regulations, were to be subjected to the control of the Army.

### The Conscientious Objector Problem.

■ The appellant's summary statement of his Argument III is as follows:

> The Local Board erred in failing to re-open defendant's classification after he had presented a *Prima Facie* case for conscientious objection. The Local Board denied defendant Due Process in failing to send him an S.S. S. Form 150.

We comment first on appellant's claim that his Local Board failed to perform its legal duty because it did not send a Form 150, the Conscientious Objector Form. It would be remarkable that a Board, established to assist the Government in selecting persons for the Army,

would have a duty to include, in the package of questionnaires which it would send out to each registrant, a form on which to fill out a claim that the registrant was a Conscientious Objector. To do that would be suggestive and confusing, and of course there is no such duty, and the appellant does not claim that there is such a duty. The appellant says that something which happened, long after his registration for the draft, imposed a duty on the Board to send him a Form 150. That happening was not a request by him for a Conscientious Objector form. If there had been such a request, no doubt he would have received the form. See 32 C.F.R. § 1621.11. The appellant did not request Form 150. But, he says, statements which he made in a letter to the Board would, if read by a normally sensitive Board whose function it was to deal with confused and inexperienced young draftees, have put the Board on notice that what he really meant was that he was claiming exemption as a Conscientious Objector. Our question then, is whether appellant's letter to the Local Board, received by it on February 11, 1969, and forwarded with appellant's file to the Appeal Board, did, if properly read, contain a Conscientious Objection claim. The District Court concluded that it did not, and we agree. The District Judge carried on an extended dialogue with able counsel for the appellant, giving counsel the opportunity, almost paragraph by paragraph of the appellant's long letter, to point out some expression which would qualify as a Conscientious Objection to war, but the Court found none.

One sentence in appellant's letter to the Board seems to us to indicate that the appellant had given thought to a Conscientious Objector claim and had rejected it. He wrote "You're now fighting a raw animal instinct that has existed in this planet for five-million years, not some kind of magic ideology that some people think up when there is nothing better for them to do." Compare this language with what is said in Welsh v.

United States, 398 U.S. 333, 344, 90 S. Ct. 1792, 1798, 26 L.Ed.2d 308 (1970), "That section exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become part of an instrument of war".

We think that what the appellant was writing to the Board about was his bitter disappointment at having his Government pick him up, just when his hard earned study to be a chemistry expert was nearing fruition, and put him in the Army where there there would always be someone saying "Do this," or "Don't do that," and where his Army Service might end in his death or maiming. In these respects his views were probably identical with those of millions of his age peers, who think that someone in authority, parental or governmental, is trying to live their lives for them. But not many of those dissatisfied young people are, legally, Conscientious Objectors.

The judgment is affirmed.