**UNITED STATES of America, Appellant,**

v.

**Jose Emiliano VELAZQUEZ, Defendant-Appellee.**

**No. 170, Docket 73–1869.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 16, 1973.

Decided Dec. 28, 1973.

George E. Wilson, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John W. Nields, Jr., and S. Andrew Schaffer, Asst. U. S. Attys., on the brief), for appellant.

Michael D. Ratner, New York City (Richard A. Levy and Eisner, Levy & Steel, New York City, on the brief), for defendant-appellee.

Before KAUFMAN, Chief Judge, and LUMBARD and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

This is an appeal by the government under 18 U.S.C. § 3731 (as amended) from an order of the Southern District (Pierce, J.) dismissing an indictment which charged Jose Emiliano Velazquez with failure to submit to an armed forces physical examination (count I) and with failure to report for and submit to induction (count II), both in violation of 50 U.S.C. App. § 462(a).

The indictment in the case was filed July 25, 1972, and on August 8, 1972, Velazquez pleaded not guilty. Over the following months he filed fourteen voluminous motions for dismissal, extensive discovery, and other forms of pretrial relief. The government filed brief affidavits in opposition to most of these motions. Trial had been tentatively set for December 4, 1972.

However no trial was held, nor any pretrial hearing. Instead, after several months' delay, and without hearing counsel for either side, Judge Pierce dismissed the indictment on April 24, 1973, on the basis of one of Velazquez' motions. In doing so he relied solely on the motion papers and presumably, although not explicitly, on the government's affidavit in opposition.

Velazquez' successful motion was made under Rule 12, F.R.Cr.P., on the grounds that he had a valid defense to count I of the indictment. He asserted that he had not received adequate notice of his duty to report for a physical examination, and that therefore he had never been under an obligation to submit to it.

Judge Pierce agreed with this argument, and extended it to count II of the indictment as well. In his memorandum opinion of April 30, 1973, in support of his dismissal order, Judge Pierce considered that under Rule 12 the court was entitled to pass upon the alleged defense to the indictment on the grounds of inadequate notice, inasmuch as such a defense, if raised at trial, would be passed upon in the first instance by the trial judge. He therefore considered those portions of Velazquez' Selective Service record which Velazquez had obtained on pretrial discovery and which had been included as part of the motion papers.

These revealed that on October 17, 1971, Velazquez' local board in New York mailed him a notice to report for and submit to a pre-induction physical examination (SSS Form 223), the examination to be held on November 2, 1971. Due to a typographical error, the notice was misaddressed and was returned undelivered to the board by the post office. A second Form 223 was sent on October 27, 1971, for the same November 2nd examination date, and to the correct address. But as Velazquez had moved, evidently without notifying his local board of the fact, it too was returned undelivered. The board subsequently obtained Velazquez' new address and on January 5, 1972, sent him notice (Form Letter # 8) that he was under a continuing obligation to report for and submit to a physical examination. The letter informed him also that he was to appear for the examination at the Whitehall Street Armed Forces Entrance and Examination Station in Manhattan at 7:00 a. m. on January 20, 1972, a date later changed to January 21st. There is no dispute that Velazquez actually received this letter notice.

The motion papers further revealed that on January 21st Velazquez appeared

as directed at the Whitehall Street station for his examination. However he refused to undergo the examination and refused to cooperate with Selective Service personnel, and he continued this refusal in spite of efforts by his local board to obtain the reasons for his failure to take the physical examination. Thereafter, on June 1, 1972, he was sent an order to report for and submit to induction because of his prior delinquency, the reporting date given as July 6, 1972. He again appeared at the Whitehall Street station on the required date, but he continued his refusal to cooperate.

Judge Pierce in his memorandum noted that Form Letter # 8 contained none of the procedural safeguards and information about the rights of registrants which are printed on Form 223.[1] Relying on the fact that 32 C.F.R. § 1628.-16(a) (1971) specified the use of Form 223,[2] and that the Selective Service apparently deemed notice of these rights to be of sufficient importance to be included on the required form, he held that Form Letter # 8 did not provide adequate notice of an obligation to report, and hence that no duty to report arose upon its receipt. He concluded that, absent the duty to report, even though Velazquez had reported as ordered, there was no violation of 50 U.S.C. App. § 462(a) for failure to submit to the examination, since such a violation is premised on avoidance of the obligation with prior knowledge of the conse-

quences. He accordingly dismissed the indictment as to count I.

Judge Pierce then went on to dismiss the indictment as to count II. He noted that a local board's authority to order a registrant to report for and submit to induction rested on 32 C.F.R. § 1631.-6(a) (1972), which provides:

> That notwithstanding Part 1628 or any provision of these regulations, when a registrant in whatever classification has refused or otherwise failed to comply with an order of his local board to report for and submit to an Armed Forces examination, he may . . . be selected and ordered to report for induction even though he has not been found acceptable for service in the Armed Forces . . . .

It followed, Judge Pierce concluded, that "since the defendant was under no legal duty to report for a physical examination, he cannot be said to have 'refused or otherwise failed to comply with an order of his local board to report for and submit to an Armed Forces examination.' "

The government seeks to appeal Judge Pierce's dismissal of the indictment in respect to both counts. It relies for authority to appeal on 18 U.S.C. § 3731 (as amended) and contends that appeal is not barred in this case by the constitutional protection against double jeopardy, which is now the sole bar to government appeals from dismissals in criminal cases.[3] On the merits it con-

---

1. Form Letter # 8 informs the registrant that he is under a "continuing obligation" to report for a physical examination, refers to any outstanding order of the local board, and informs him of the place, date, and time for his examination. By contrast, a Form 223 order contains additional information on how the registrant may have the location of his physical examination transferred, how he may guard against loss of his job, and how he may present evidence of medical disability or prior military service. It also warns him of possible administrative and criminal sanctions for failure to obey the order.

2. The applicable regulation during the period in issue here, originally § 1628.16 of 32 C. F.R., was renumbered to § 1628.10 effective

December 10, 1971, and to § 1641.4 effective September 2, 1972. The section, in pertinent part, reads as follows:

> When the local board *mails* to a registrant an Order to Report for Armed Forces Examination (SSS Form 223), it shall be the duty of the registrant to report for such examination at the time and place fixed in the order. . . . [Emphasis added.]

3. The relevant portion of the Criminal Appeals Act, 18 U.S.C. § 3731, as amended, which allows appeals by the government in criminal cases in certain instances provides:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a

tends that receipt of Form Letter # 8 provides adequate notice of a Selective Service obligation to report for and submit to a physical examination. It also urges that mere mailing of the form gives rise to the obligation (see fn. 2).

In opposition Velazquez contends, on the jurisdictional point, that although Judge Pierce styled his order a dismissal of the indictment, and although it was based solely on motion papers, it was nonetheless equivalent to an acquittal on the merits because the court had gone beyond the face of the indictment to consider "competent evidence" (the court's term) contained in his Selective Service record. He therefore claims that an appeal would permit facts "peculiar to the defendant"—specifically receipt of Form Letter # 8 in place of SSS Form 223—to be reconsidered by a second tribunal, contrary to the provisions of § 3731. He argues further that an instance of double jeopardy would be the more clearly made out because of the hybrid nature of Selective Service cases, since they are at once traditional criminal proceedings and also proceedings for the review of administrative action which place in the hands of the judge issues of fact not usually left to his determination in ordinary criminal trials.

Velazquez also contends that even if an appeal is allowed, he should nonethe-

less prevail on the merits because Form Letter # 8 does not provide adequate notice of legal obligations the neglect of which may incur severe criminal and administrative sanctions.

### I.

█ We hold that in this case an appeal by the government does lie under § 3731. We conclude that Velazquez was not placed in jeopardy by the determination of the trial court when it based the dismissal of the indictment against him solely on motion papers submitted prior to trial, before either the selection or waiver of a jury and without any opportunity for counsel on either side to be heard.

█ The Supreme Court has recently cautioned that the question of assessing whether jeopardy attaches is not to be decided by any mechanical test. Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); United States v. Sisson, 399 U.S. 267, 90 S. Ct. 2117, 26 L.Ed.2d 608 (1970). Accordingly, it is not wholly dispositive of the claim raised by Velazquez to state that since the jury was neither waived nor empaneled, jeopardy could not have attached, although this gives rise to a strong presumption.[4] United States v.

district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

   *    *    *    *    *

The provisions of this section shall be liberally construed to effectuate its purposes.

This language was the result of an amendment added by the Omnibus Crime Control Act of 1970, § 14(a), 84 Stat. 1890, with respect to cases in which the indictment was brought after the effective date of the Act, January 1, 1971. Under the prior wording of the statute appeals by the government in criminal cases were more strictly limited than merely by the double jeopardy provision of the Constitution, and raised many difficulties beyond those concerning double jeopardy. See United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970).

4. It is safe to conclude on the basis of his pretrial motions, which sought in part to discover material concerning federal jury selection procedures, that Velazquez did not contemplate waiving his right to a jury trial and that therefore the jury would be the ultimate trier of fact on the merits. However, the stage reached at the time of Judge Pierce's dismissal of the indictment was too early for us now to state categorically that this was a jury or a non-jury case. Moreover, we are mindful, as Velazquez has argued, that in Selective Service cases before a jury the judge may initially decide some of the facts at trial. But these considerations relating to the course a trial may take once it is before a jury or simply a judge are not determinative where the defendant's choice of trier of fact has not yet been made.

Pecora, 484 F.2d 1289 (3rd Cir., 1973). Nor is it satisfactory to rely, as has been done in non-jury cases, simply on the fact that no evidentiary hearing was held by the trial court in disposing of the motion. See Newman v. United States, 133 U.S.App.D.C. 271, 410 F.2d 259, cert. den., 396 U.S. 868, 90 S.Ct. 132, 24 L.Ed.2d 121 (1969). The critical question is whether the government's action in prosecuting Velazquez, in both its administrative and judicial phases, reached the point where the government's power to retrace its steps is checked by countervailing interests of the individual protected by the double jeopardy clause of the fifth amendment. United States v. Jorn, *supra*, at 480, of 400 U.S., 91 S.Ct. 547; Wade v. Hunter, 336 U.S. 684, 688–689, 69 S.Ct. 834, 93 L.Ed. 974 (1949); United States v. Brown, 481 F.2d 1035, at 1040–1041 (8th Cir., 1973).

■ The present law of double jeopardy precludes retrial in instances when, regardless of the label,[5] the trial court has ruled in favor of the defendant on facts going to the merits of the case if these facts were adduced at trial (United States v. Sisson, *supra*); if they were presented at an evidentiary hearing (United States v. Southern R. Co., 485 F.2d 309, at 312 (4th Cir., 1973)); or if they were stipulated by the parties (United States v. Brewster, 408 U.S. 501, 506, 92 S.Ct. 2531, 33 L. Ed.2d 507 (1972); United States v. Sisson, *supra,* at 285 of 399 U.S., 90 S.Ct. 2117; but see fn. 6, *infra*).

■ Retrial is permitted, however, when the trial court ruled in the defendant's favor on the allegations in the indictment (United States v. Brewster, *supra*); on facts contained in the government's bill of particulars (United States v. Boston & Maine R. Co., 380 U.S. 157, 85 S.Ct. 868, 13 L.Ed.2d 728 (1965)); or on any procedural defect which would manifestly require reversal on appeal if conviction resulted (Illinois v. Somerville, *supra*). Retrial is permitted in these situations even though the trial itself may have completed its course.

■ The underlying thrust of the protection against double jeopardy is thus not to limit the number of times a defendant may be summoned into court on a single offense. Under present law this may be done repeatedly. It is rather to limit to one the number of times that a defendant may be required to submit proof of his innocence to challenge or acceptance by the other side. This expresses the root function of the trial as a proceeding where litigants are to be heard before a neutral tribunal, where they appear and argue as adversaries and where their case is to be subjected to public scrutiny and is open to rebuttal.[6] It is multiple trials in this sense which the double jeopardy clause is designed to prevent.

The district court's granting of Velazquez' motion presented a different situation. There was no trial. There was no evidentiary hearing. There was, in fact, no introduction of evidence as commonly understood in our adversarial system.

---

5. While many of the problems discussed in *Sisson* (see fn. 3, above) concerning the characterization of motions may now be avoided, we do not see that the amended version of the statute in any way makes the law of double jeopardy more liberal. That law is rather the "constant" by which appealability is to be measured. Consequently, solely insofar as jeopardy to the individual is concerned, we perceive no reason for distinguishing cases decided under the old wording of the act from those decided under the new.

6. That an adjudication on stipulated facts would bar retrial is in keeping with this pol-

icy of openness. In such an instance facts have again been offered to the other side and made part of the public record, with the only difference that instead of inviting challenge they have engendered acquiescence. But at least both sides have had the opportunity to pass upon them in the process of submission to the court. We note, however, that the prohibition against an appeal on stipulated facts rests at present on dicta in the *Brewster* and *Sisson* cases and not on a specific holding of the Supreme Court. See United States v. Brewster, *supra,* at 506 of 408 U.S., 92 S.Ct. 2531; United States v. Sisson, *supra,* at 285 of 399 U.S., 90 S.Ct. 2117.

There was no stipulation of facts. Rather, the court went to the motion papers of the defendant, which included copies of entries in his Selective Service record, and without giving either side an opportunity to be heard, and without even having the defendant appear in open court, concluded as a matter of law that the defendant had been deprived of due process because of inadequate notice provided by Form Letter # 8.

The only way in which an appeal of this determination could place Velazquez in double jeopardy would be to claim that jeopardy attached in the trial court's reaching beyond the face of the indictment to "[a] showing of evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial." United States v. Brewster, *supra*, at 506, of 408 U.S. at 2534 of 92 S.Ct.

There was, however, no such showing. It might have been argued that there has been such a showing had the facts for which the court reached been tested in the forge of open court, as the defendant's sincerity had been in *Sisson*, or had the facts at least been accepted by the government without opposition. But this was not the case.

Reliance on facts is not in itself dispositive of the issue. As we stated earlier, retrial is permitted, and consequently an appeal under § 3731 is also permitted, when dismissal of an indictment is based on facts alleged in the indictment. United States v. Brewster, *supra*, at 506–507, 92 S.Ct. 2531; see also United States v. Green, 350 U.S. 415, 76 S.Ct. 522, 100 L.Ed. 494 (1956);

United States v. Bramblett, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955). But it is also permitted when dismissal is based on facts revealed in other pretrial stages.

In United States v. Boston & Maine R. Co., *supra*, for example, an appeal was allowed under the old § 3731 when the trial judge had gone beyond the face of the indictment, which he considered as charging a valid offense in law, to reach the government's bill of particulars, on the basis of which he concluded that no offense was charged after all. As a consequence he had dismissed the indictment. The Supreme Court held on review that jeopardy did not attach in that situation.

In the more recent case of United States v. Martin Linen Supply Co., 485 F.2d 1143 (5th Cir., 1973), which involved an appeal under the newly amended § 3731, the Fifth Circuit similarly allowed an appeal where the trial court's dismissal of the indictment had been made after "the government [had] disclosed the nature of its case in . . . extensive pre-trial procedures" but had not yet put its case to test in any " 'hearing' of the evidence" prior to trial, much less at trial itself. Again it was held that jeopardy did not attach.[7]

The issue, then, is not whether the court has relied on facts outside the indictment, nor even on whether the trial judge may have considered such facts as "undisputable," as Judge Pierce did here. Since facts are necessarily assumed as uncontroverted for the purposes of a dismissal made at this or any stage, the issue is how these facts have

---

7. Most of the recent draft cases cited by the defendant in support of his claim that jeopardy has attached, while close in point, are distinguishable because the trial court's action had gone further than was the case here. In most of them there was either a hearing on the evidence raised in the motion to dismiss or a presentation of evidence at trial, thereby arguably carrying the defendant across the threshold of jeopardy. See United States v. Sisson, *supra*; United States v. McCreery, 473 F.2d 1381 (7th Cir.

1973) ; United States v. Ponto, 454 F.2d 657 (7th Cir. 1971) ; United States v. Findley, 439 F.2d 970 (1st Cir. 1971). But see fn. 8, *infra*. United States v. Rothfelder, 474 F.2d 606 (6th Cir.), cert. den., 413 U.S. 922, 93 S.Ct. 3066, 37 L.Ed.2d 1044 (1973), appears more favorable to the defendant from the opinion of the court of appeals, but the district court's opinion, 338 F.Supp. 1164 (W.D.Mich., 1972), makes it clear that the motion was decided on facts which the parties had agreed were undisputed.

been treated.[8] Consideration of such facts has not been thought to place a defendant in jeopardy when he has not ventured them before the court in the presence of his adversary. See United States v. Covington, 395 U.S. 57, 89 S. Ct. 1559, 23 L.Ed.2d 94 (1969); also United States v. Sisson, *supra*, fn. 19 at 290–291 and fn. 56 at 302–303 of 399 U. S., 90 S.Ct. 2117.

As Senator Bacon remarked during the passage of the original Criminal Appeals Act, "The words 'being in jeopardy' are entirely a technical phrase" and do "not relate to the fact that a man is in danger as soon as an indictment is preferred against him." 41 Cong.Rec. 2191. The Constitution does not protect a defendant from being placed in danger as often as the state may wish, so long as he is put to his proof only once. Just as he would not have been put to his proof on facts alleged in the indictment, so he was not on facts made available to the trial court solely through pre-trial discovery and which the court and the parties have treated *no differently* than factual allegations in the indictment itself or which might have been contained in a bill of particulars.[9] To conclude that a trial judge may forever bar proper prosecution of a criminal defendant after a dismissal at this stage would be to permit the trial judge to arrogate to himself the power to decide a case on the merits without ever having the defendant confronted with the evidence in open court.

Consequently we hold this court has jurisdiction to review the dismissal of the indictment.

## II.

On the merits we find the defendant's contentions unpersuasive. By the district court's assumptions there was no dispute that Velazquez received notice of the location, time, and date of his physical examination.[10] It was also undisputed that he did report as ordered, but then refused to submit to the examination. Count I of the indictment did not charge him with failure to report for the physical, but only with failure to submit to it. His contention, accepted by Judge Pierce, is that since the duty to report was vitiated by inadequate notice of the consequences of failing to report and of certain procedural rights of registrants, then even though he did report he was yet under no duty to proceed further and cooperate with the Selective Service.

This argument might be more persuasive if Velazquez claimed in what way he had been prejudiced by the inadequacy of the notice provided him, if for example he had had a possibly valid claim

---

8. See the dissenting opinion in United States v. Jenkins, 490 F.2d 868, at 880 (2d Cir. 1973), for further views on the critical role of factual allegations in determining the nature of a dismissal of the indictment. It is true that the procedural situation in *Jenkins* was markedly different than here, since trial there was well underway; consequently we do not believe that the majority's opinion in *Jenkins* is contrary to our holding here.

9. The defendant argues that were we to permit an appeal under § 3731 here, then no conscientious defense counsel would raise a motion to dismiss under Rule 12 until after trial had begun, thereby not only defeating the purpose of litigating defenses prior to trial, but also causing added expense to both the government and defendants so as to be ready in every case for a trial on the merits. See United States v. Findley, *supra* (fn. 7). We do not agree. At most counsel would only be sure to have pretrial motions under Rule 12 *heard* by the court, with both sides present, and with characterizations of evidence argued to the trier of fact. Where counsel has raised a defense which does not call for such a presentation of evidence, his client runs no more risk than on a motion for dismissal of an indictment based, for example, on the government's bill of particulars.

10. Since Velazquez concedes that he did receive Form Letter # 8, there is no need to consider the argument, suggested by the government and rejected by Judge Pierce, that the mere mailing of an order to report creates a "continuing" and valid legal duty to comply which is in itself sufficient to maintain a conviction under 50 U.S.C.App. § 462(a) if noncompliance is proven. See fn. 2, *supra*.

to medical exemption or to an exemption for prior military service, or if he had stood in danger of losing employment because of the examination. See United States v. Wendt, 452 F.2d 679 (9th Cir. 1971). But the record, both before Judge Pierce on the motion and before this court on appeal, is barren of any such claim. Velazquez' claim is rather that *all* his obligations to the Selective Service, including those to report for and submit to induction, regardless of their validity, must fall if the one on which no infraction of the law is charged contained a procedural defect which is not even shown to have been prejudicial to him.

■ This is too large a structure to build on so weak a foundation. In the first place, Form Letter # 8 does provide adequate notice of the obligation to report for and submit to a physical examination. The letter advises the registrant of the existence of the obligation, of the time, date, and location to report, and of an address or telephone number through which the registrant can communicate with the authority promulgating the order should he be unable for some reason to comply.

Adequacy of notice has been found in other cases on less than even these requirements. United States v. Abrams, 476 F.2d 1067, 1070 (7th Cir. 1973); United States v. Williams, 433 F.2d 1305, 1306 (9th Cir. 1970). Both of these cases involved oral notice to the registrant of a Selective Service obligation where there was no proof of receipt of any written order, nor any proof that the registrant was informed of the consequences of disobedience. As a matter of law no more than this was required at the time Velazquez' letter order was received. See United States v. McGee, 460 F.2d 1287 (7th Cir. 1972); United States v. Zaugh, 445 F.2d 300 (9th Cir. 1971); United States v. Dombrouski, 445 F.2d 1289 (8th Cir. 1971); United States v. DeNarvaez, 407 F.2d 185 (2d Cir.), cert. den., 396 U.S. 822, 90 S.Ct. 62, 24 L.Ed.2d 72 (1969).

■ The government, when it has expressed through valid laws its need for the compulsory military service of its citizens, does not carry the burden of calling up those selected by only one detailed means. It may use a variety of means of communication which are in common use: letter, telegraph, telephone, personal contact. See Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943). This necessity for flexibility need only provide notice in sufficient detail so that those who fail to heed the call will not be punished because they did not know the act required of them. A citizen's possible defenses to performance of this act need not be specified to him in advance in an order to report so long as some mechanism is provided, as it is through the induction system, by which such claims may be raised. United States v. Irons, 369 F.2d 557 (6th Cir. 1966). See Schutz v. United States, 422 F.2d 991 (5th Cir. 1970).

If Velazquez had such claims, he could have tested them through cooperation with the Selective Service. Should he still have them, he is free to test their meritoriousness at trial. He may then place in issue any facts which he believes show that the obligations were unlawfully imposed on him to submit to a physical examination and later to report for and submit to induction, as well as any facts which may rebut any presumption supporting the validity of such obligations. We hold only that such obligations were not unlawfully placed upon him when notice of them was initially made through receipt of Form Letter # 8.

■ Beyond this, however, there is a well-established distinction in the decisions enforcing the draft laws between the obligation of reporting for examination or induction and that of submitting to them. See Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944). Wilful refusal to comply with either obligation can constitute the foundation for a separate offense under 50

U.S.C. App. § 462(a) or its predecessor provision (see United States v. Dombrouski, *supra,* at 1293–1295; Schutz v. United States, *supra,* at 994), although a violation for failure to report is ordinarily merged into one for failure to submit if both are established. United States v. Irons, *supra.*

This distinction makes Velazquez' claims all the more anomalous. Charged with refusal to submit to a physical examination, he may of course raise all possible defenses to the charge, including inadequate notice of the consequences of such refusal. In so doing he may indeed be able to establish that, once at the examination station, he was never apprised of all the ramifications of disobedience or of failure to cooperate. To establish that, however, requires more than a showing that his order to report contained allegedly defective notice of his obligation merely to be at a certain place at a certain time. For, having reported, he must show more than defective notice to report in order to establish a defense that his refusal to submit to a physical examination was lawful.

We therefore hold that on the basis of the facts disclosed in the motion papers before the district court there was no legal ground for dismissing count I of the indictment. It necessarily follows that count II was also improperly dismissed. The indictment is therefore to be reinstated in all respects.

Reversed and remanded for further proceedings.

KAUFMAN, Chief Judge (dissenting):

As I understand the majority opinion, we are holding today that, because the trial judge deprived the government of something akin to due process, the defendant is to be denied the protections of the Double Jeopardy Clause. In so holding, we fly in the face of the legislative history of the Criminal Appeals Act, 18 U.S.C. § 3731, 84 Stat. 1890, the Supreme Court's decisions interpreting that Act, and our own recent decision in United States v. Jenkins, 490 F.2d 868, at 868 (2d Cir. 1973). More importantly, we have begun a process of eroding the absolute protections of a Constitutional command: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." That principle, "one of the oldest ideas in western civilization," [1] is justly founded upon "fear and abhorrence of governmental power to try people twice for the same conduct." [2] My brother Lumbard in his dissent in *Jenkins*, stated that the "inflexible application of the Double Jeopardy Clause unnecessarily frustrates the fair administration of criminal justice." [3] He would therefore apply to this case a balancing test to determine whether the protections of that clause attach. [4] I believe that the purpose of the Double Jeopardy Clause was to insure the fair administration of criminal justice by placing an absolute barrier between the awesome power of the government and the criminal accused when a judgment on the merits is rendered in his favor. Accordingly, I dissent.

We recently had occasion in United States v. Jenkins, *supra,* to explore in depth the ambit of the double jeopardy protection accorded one whose indictment was dismissed. In a thorough opinion by my brother Friendly, we held that the Double Jeopardy Clause bars an

---

1. Bartkus v. Illinois, 359 U.S. 121, 151, 79 S.Ct. 676, 696, 3 L.Ed.2d 684 (1959) (Black, J., dissenting).

2. *Id.*

3. United States v. Jenkins (2d Cir. 1973) 490 F.2d at 881 (Lumbard, J., dissenting).

4. According to the majority, "The critical question is whether the government's action in prosecuting Velazquez, in both its administrative and judicial phases, reached the point where the government's power to retrace its steps is checked by countervailing interests of the individual protected by the double jeopardy clause of the fifth amendment." This is, of course another way of saying that the interests of the accused must be balanced against those of the government.

appeal by the government after the trial court has "dismissed the indictment" based on facts developed at trial, not apparent on the face of the indictment, and which related to the general issue of the case. Although the majority expressly reserved the question whether a similar result would obtain had the district court acted before trial, neither precedent nor policy dictate a different conclusion.

It is fundamental that a defendant, once acquitted, may not again be placed in jeopardy for the same alleged crimes. Fong Foo v. United States, 389 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1905); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Accordingly if the judgment below constituted an acquittal of Velazquez, reprosecution is barred and we lack jurisdiction to hear this appeal.

The majority opinion notes that Velazquez filed numerous motions for pretrial relief. The trial judge, ruling in defendant's favor on one of these motions, dismissed the first count of the indictment which alleged failure to submit to a physical examination, and the second count—failure to report for induction—as well. These dismissals form the predicate of this appeal. Although it is true that Velazquez characterized his motion as one to dismiss the indictment pursuant to Rule 12, Fed.R.Crim. P., it is clear that he was not asserting any defect appearing on the face of the indictment, nor did he claim that the indictment failed to charge a crime, or that the underlying statute was violative of the Constitution. Rather, Velazquez asserted his factual defense to the charges, contending that he had not received proper notice of the physical examination and accordingly had no obligation to report for or submit to that examination.

It is critical to note that in support of his motion, Velazquez submitted documentary evidence, garnered in the course of pretrial discovery, which included the Minutes of Action and three Selective Service Board communications regarding his physical examination, all of which were contained in his Selective Service file. The government answered by submitting a four-page affidavit in opposition to the motion. It made no effort to dispute the evidence proffered by Velazquez, adding only that Velazquez had failed to point out that his "new address was not received until 3 days after his reporting date." In ruling on the motion, Judge Pierce concluded that since the *facts* were not in dispute, and these facts sustained Velazquez's contention that he had never received nor was otherwise aware of adequate notice of his duty to report for a physical examination, the Selective Service violations had not been established.[5] Actions had not been established. Accordingly, Judge Pierce dismissed the indictment.

At the outset, it is clear that neither Velazquez's description of his motion as one to "dismiss" the indictment nor Judge Pierce's characterization of his decision as a "dismissal" is dispositive, of the question before us. We are instructed that it is the nature of the judgment, not the name appended to it, which is determinative of the double jeopardy issue. United States v. Sisson, 399 U.S. 267, 279 n. 7, 290, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970); United States v. Jenkins, *supra,* 490 F.2d at 878. In *Sisson,* for example, the district court granted a motion "in arrest of judgment" following a jury verdict of guilt. A majority[6] of the Supreme Court held, however, that despite this characteriza-

---

5. Since I do not believe we have jurisdiction to hear this appeal, I express no view on the merits of this ruling.

6. Reference is made to Part II C of Justice Harlan's opinion in *Sisson,* United States v. Sisson, *supra,* 399 U.S. at 288–290, 90 S.Ct. 2117, in which he was writing for a majority of the Court.

tion, the judgment was in fact an acquittal and had to be treated as such because the trial judge had made findings of fact based on the evidence presented at trial. Moreover, he had applied the law to those facts and concluded ultimately that Sisson was innocent of draft evasion. The majority stated that since the judgment was based upon factual determinations beyond the face of the indictment, it would not be treated as a "dismissal" or an "arrest of judgment." It was, instead, an acquittal on the merits. As such, the Court held, the government was precluded from appealing by both the then-existing version of the Criminal Appeals Act and, more basically, by the constitutional bar to double jeopardy.

Although, as in *Jenkins*, the trial judge in *Sisson* had made his findings of fact on evidence submitted in the course of a trial, any doubt that the same rationale applies to a judgment entered prior to commencement of trial was dispelled by United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L. Ed.2d 507 (1972), where the prosecution attempted to appeal from a pretrial dismissal of an indictment. The appellee argued that the dismissal was in fact an acquittal, and hence non-appealable on statutory and constitutional grounds. The Court agreed that if the district court had gone beyond the face of the indictment to make factual findings peculiar to the case at hand, *Sisson* would prohibit the government from seeking review:

> Under United States v. Sisson . . . an appeal does not lie from

a decision that rests, not upon the sufficiency of the indictment alone, but upon extraneous facts. If an indictment is dismissed as a result of a stipulated fact or the showing of evidentiary facts outside the indictment, which facts constitute a defense on the merits at trial, no appeal is available.

408 U.S. at 506, 92 S.Ct. at 2534.[7]

Moreover, under both the prior and current Criminal Appeals statutes, every circuit that has considered the question in the context of a Selective Service prosecution has decided that a pretrial "dismissal" based on facts not found on the face of the indictment is in reality an acquittal and may not be appealed. United States v. Rothfelder, 474 F.2d 606 (6th Cir. 1973); United States v. King, 474 F.2d 1343 (4th Cir. 1973); United States v. McCreery, 473 F.2d 1381 (7th Cir. 1973); United States v. Weller, 466 F.2d 1279 (9th Cir. 1972); United States v. Ponto, 454 F.2d 657 (7th Cir. 1971); United States v. Findley, 439 F.2d 970 (1st Cir. 1971). Although only the Seventh Circuit in *McCreery* and *Ponto*, and the Ninth Circuit in United States v. Hill, 473 F.2d 759 (1972), an obscenity prosecution, have explicitly stated that the double jeopardy clause bars reprosecution, each of the other decisions, which bar the appeal after determining that the "dismissal" in fact constituted a non-appealable acquittal, necessarily imply the constitutional bar as well.[8]

In the face, then, of uniform authority to the contrary,[9] the majority con-

---

7. The Court went on to decide that in the particular circumstances of the *Brewster* prosecution, the district court judgment rested solely upon the indictment itself, rather than upon extraneous facts, and hence was a reviewable dismissal rather than an acquittal.

8. Both the prior and current texts of the Criminal Appeals statutes explicitly provide only for government appeal from *dismissals* of prosecutions. Several circuits have therefore concluded that the statute does not permit appeal from an acquittal, as opposed to

dismissal, without expressly reaching the constitutional issue. In a sense, however, this begs the question, because one of the essential features of an acquittal that distinguishes it from a dismissal is its finality, in the double jeopardy sense. The determination that a particular judgment is an acquittal, therefore, is at least a tacit expression that the double jeopardy clause forbids reprosecution.

9. Contrary to the majority's claim, United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969), does not repre-

cludes that although the trial court clearly went beyond the face of the indictment in granting Velazquez's motion to dismiss, jeopardy did not attach because the facts relied on by the court had not "been tested in the forge of open court," nor had they "been accepted by the government without opposition." Putting to one side that the evidentiary facts upon which Judge Pierce ruled were effectively beyond dispute,[10] I cannot subscribe to the majority's rationale which exalts form over substance in determining when the fundamental protection of the Double Jeopardy Clause shall apply. Whether the facts found by the court were elicited at trial, in an evidentiary hearing or, as in this case, on the basis of affidavits and exhibits presenting uncontested documentary evidence, when those facts support a defense to the crime charged, an acquittal results.

Surely the majority's emphasis on procedural niceties disregards the Supreme Court's repeated admonitions against the use of wooden technicalities in construing the double jeopardy provision. *See e. g.* Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

A simple illustration will demonstrate the ethereal quality of the distinction drawn by the majority between a "fact-finding proceeding" which triggers the protection of the Double Jeopardy Clause and one which does not. The majority virtually concedes that an appeal would not lie in this case had Judge Pierce ruled after receiving evidence submitted by Velazquez "in the presence of his adversary." Thus, had Velazquez been required to call even a single witness in support of his motion—perhaps the chairman or secretary of the draft board—to authenticate the contents of

---

sent an instance in which an appeal was permitted where the trial court went beyond the face of the indictment in ruling on a motion to dismiss. In *Covington*, the defendant was indicted for having violated the Marihuana Tax Act by obtaining marijuana without having paid a transfer tax. The defendant moved to dismiss on the ground that his privilege against self-incrimination would necessarily provide a complete defense to the prosecution. The government argued that, properly construed, the transfer tax provisions of the Act would not compel incriminatory disclosures. The district court dismissed the indictment, and although the Court affirmed on the merits, it noted that the bases for the dismissal were questions of law and that, in Covington's case, there was no necessity to resolve issues of fact peculiar to the motion. Moreover, in *Sisson*, Justice Harlan explicitly distinguished *Covington* on the ground that no factual findings were required, and added that, "nowhere does the opinion in *Covington* even hint that a dismissal requiring a pretrial evidentiary hearing, or a dismissal motion properly deferred to the trial of the general issue would be appealable under the motion-in-bar provision of the Criminal Appeals Act." United States v. Sisson, *supra*, 399 U.S. at 303 n. 56, 90 S.Ct. at 2137.

The majority's reliance on United States v. Boston & Maine Railroad, 380 U.S. 157, 85 S.Ct. 868, 13 L.Ed.2d 728 (1965), which my brother Lumbard also cited in his dissent in *Jenkins* is similarly misplaced. The jurisdictional point was apparently neither raised

nor considered. Moreover, the Court explicitly left open all questions except its construction of the statute involved. Finally, the Court noted that, although the case was decided below and argued on appeal on the assumption that the indictment itself was sufficient against a motion to dismiss but became insufficient by reason of the bill of particulars, the Court refused to express any view whether a bill of particulars was in fact *part of the record* for purposes of a motion to dismiss an indictment. Of course, a court may always consider the face of the record in ruling on a motion to dismiss. At most, *Boston & Maine Railroad* stands for the proposition that a bill of particulars which is a "filed" paper in a criminal proceeding, as is the indictment, may serve to "illuminate" the appropriate construction of a statute. But, the Selective Service documents considered in the instant case constitute evidence, not a "filed" paper or an additional pleading or "illumination" of the indictment. The documents were offered by the defendant as his answer to the charge and to establish his innocence.

10. On appeal, the government rather weakly maintains that the district court's unexpected granting of the defense motion prevented the prosecution from presenting its evidence. But even now the government does not deny the accuracy of the materials excerpted from Velazquez's Selective Service file, nor does it challenge the correctness of the district court findings of fact drawn therefrom.

his Selective Service file, the requisite standard of formality pronounced by the majority would have been satisfied. Not only will this concept promote needlessly prolonged litigation to supply the trappings demanded by the majority, but it is far too slender a reed on which to rest fundamental constitutional rights.

If there remains any doubt that the majority's opinion pays homage to form at the expense of substance and reason, our decision in United States v. Strayhorn, 471 F.2d 661 (2d Cir. 1972) should lay it to rest. We set down in *Strayhorn*, for the guidance of trial courts in the future, a procedure in Selective Service prosecutions for dealing with defenses challenging the validity of Selective Service orders, defenses which would ultimately determine the life or death of the case. There, we stated that the order-of-call defense, which attacks the validity of the local board's induction order, "is one properly raised before trial through a motion for judgment of acquittal." United States v. Strayhorn, *supra*, 471 F.2d at 665. The forceful reasons of judicial efficiency which led us to compel prospective defendants to assert the order-of-call defense prior to trial would certainly appear applicable as well to defenses attacking the issuance and mailing of Selective Service orders, such as that advanced here. Since I read *Jenkins* to bar appealability had Judge Pierce sustained the identical defense following examination of Velazquez's Selective Service file upon a motion for acquittal at the close of the prosecution's case, I cannot accept the majority's position which only penalizes Velazquez for heeding the import of *Strayhorn*.

In sum, I find it difficult to acquiesce to the erosion of the constitutional guarantee against double jeopardy which my brothers' opinion condones. Had Velazquez called his motion a "motion for judgment of acquittal" rather than a "motion to dismiss," and had the judge chanted the magic words—"not guilty," "I acquit" or "the government has failed to meet its burden of proof beyond a reasonable doubt"—rather than "I dismiss," his decision would have been immune to appellate review and the defendant protected against retrial. Surely if *Sisson* and *Jenkins* teach us anything, it is that mere labels do not carry the day on an issue as vital as double jeopardy. It can hardly be questioned that Judge Pierce indeed treated Velazquez's motion as one to acquit, for he found facts, nowhere appearing on the face of the indictment and grounded on evidence proffered by the defendant, which, in addition, went to the essence of his guilt or innocence of the offense.

I conceive that the underlying motivation for the majority's holding is its concern that the trial judge may bar "proper" prosecution of a case by arrogating to himself "the power to decide a case on the merits without ever having the defendant confronted with the evidence in open court."[11] But, the judge has that power now, either by "dismissing" the indictment on undisputed, and therefore unconfronted, facts after a trial has commenced, or by directing a verdict of acquittal at the close of the government's case. He may also, it would appear from my brother's opinion, dismiss an indictment before trial on facts not appearing in the record and, so long as he does it with a sufficient degree of formality, protect the defendant against an appeal and retrial. Thus, despite its apparent narrowness, the danger with the majority's opinion is that balancing tests will be used to whittle away what my brother Friendly referred to in *Jenkins* as the "thicket" of double jeopardy protections until few branches remain to shelter the accused. I cannot join in this process of attrition of one of the most basic constitutional protections.

Accordingly, I respectfully dissent.

---

11. In this case, of course, the defendant *produced* the evidence in his defense.